CITY OF EAST ST. LOUIS

v.

JAMES O'FLYNN.

1. INJURY TO PRIVATE PROPERTY.—The term " private property" in our present constitution, that is forbidden to be taken or damaged for public use without just compensation, is not limited to the tangible subject-matter or *corpus* of the property, but includes the right of user and enjoyment of it; and where the impairment or destruction of such right damages the owner of the property in excess of that sustained by the public, by the construction and use of a public improvement, the law gives him an action for such injury.

2. PRESUMPTIONS.—The jury were justified in inferring, in this case, that the city had established the grade and permitted the work to be done in the manner it was done, since the city reserved to itself the right to con-

trol the manner in which the privilege conferred on the railroad company should be exercised.

3. OPINION AS TO DAMAGES.—It was proper to allow witnesses to give their opinion as to the amount of damages done to plaintiff's property without first showing they were acquainted with the value of the property; but it was error to permit the wife of the plaintiff to testify in his behalf, over the objection of appellant.

APPEAL from the City Court of East St. Louis; the Hon. WM. P. LAUNTZ, Judge, presiding. Opinion filed June 12, 1886.

The appellee is the owner of lot 9, block 28, in the First Ferry Division of the city of East St. Louis. The lot fronts upon Third street and extends to an alley thirty feet wide in the center of the block ; Church street runs east and west on the south of the block to Front street on the east bank of the Mississippi river. The next street south is Trendly street, extending parallel to Church street, and like it, intersecting Front street and crossing at right angles Second, Third and Fourth streets, and the alleys extending through the blocks north and south. The Cairo and St. Louis Railroad having acquired the land embraced within the limits of Front and Fourth streets, and Church and Trendly streets, for depot purposes, desired the vacation of the streets and alleys running north and south from Trendly to Church street, so it might have full control of the land within the limits above described. Negotiations to this end were had with the city, which resulted in the passage of an ordinance by the city council, vacating all streets and alleys between Front and Fourth streets, and between a line running parallel with and seventy feet north of Trend'y street and Church street, and the railroad was allowed to enter upon and take possession of the same. Permission was also given to lay tracks across the streets in this division of the city. By section five of the ordinance the railroad company was required to conform the grade of its tracks across any of said streets to such grade as should be thereafter established by the city. It was provided that in consideration of these rights and privileges the railroad company should furnish to the city 2,500 squares of rubble stone within a rea-

sonable time for the purpose of improving Frendly and Front streets contiguous to such depot grounds, and should also fill up certain described portions of said streets to a convenient grade, and sixty feet in width, free from expense to the city, the city furnishing a convenient barrow pit from which the material for filling could be obtained. The other provisions of the ordinance are not necessary to notice to a proper understanding of the case.

The ordinance was accepted by the railroad company, which took possession of the land within the described limits, graded it up from four to six feet including the streets and alleys vacated, laid its tracks, and erected on the south line of Church street a high board fence extending from Fourth street nearly to Second street across Third street, and the alley running south through block 28. The railroad company also constructed large spouts extending into Church street for the purpose of carrying off the surface water that fell upon this filled land. A portion of the water thus thrown off into Church street, it is claimed, runs over and upon the plaintiff's lot, thereby depreciating its market value, either for the purpose of selling or leasing.

The appellee commenced this suit, setting up the facts above stated and also his right to the use of Third street, and that his property was specially damaged by the vacation of the streets, the obstructions to travel along Third street, and the flowing of the water upon it from the spouts so emptying into Church street. The general issue being pleaded, a trial was had, resulting in a verdict and judgment against the city, and it appeals.

Mr. GEO. F. O'MELVINY and Mr. GARLAND POLLARD, for appellant.

Mr. L. H. HITE and Mr. J. M. FREELS, for appellee; as to damages, cited Rigney v. Chicago, 102 Ill. 68; Stack v. City of East St. Louis, 85 Ill. 377.

PILLSBURY, P. J. The term "private property" in our

present constitution, that is forbidden to be taken or damaged for public use without just compensation, is not limited to the tangible subject-matter or *corpus* of the property, but includes the right of user and enjoyment of it; and where the impairment or destruction of such right damages the owner of the property in excess of that sustained by the general public, by the construction and use of a public improvement, the law gives him an action for such injury.    Rigney v. Chicago, 102 Ill. 64.

The earlier cases, which seemed to hold that it was essential to the right of action to prove some direct physical injury to the subject of the property itself, are no longer held as stating the true rule, as they are said in C. & W. I. R. R. v. Ayers, 106 Ill. 511, to be overruled by Rigney's case, *supra*, and subsequent ones.    See also Provisions Co. v. Chicago, 111 Ill. 651, and Chicago v. McDonough, 112 Ill. 85.

The damages, therefore, that an individual may recover for injury to his property, need not necessarily be caused by acts amounting to a trespass to his real estate, but if his property be depreciated in value by his being deprived of some right of user or enjoyment, growing out of and appurtenant to his estate in the lands, as the direct consequence of the construction and use of any public improvement, his right of action is complete, and he may recover to the extent of the injury thus sustained.    C. & W. I. R. R. v. Ayers, *supra.*

Under these authorities, if the improvement made by the railroad company was authorized by the city and directly interfered with the use and enjoyment of the premises by the plaintiff, and the premises became in consequence depreciated in value, he ought to recover.    Whether filling up the grounds, as was done, and the erection of the fence on the north side of the fill, thus cutting off the plaintiff's right of way to the center of the city by way of Third street, substantially injured his property, became a question of fact for the jury to determine under the testimony introduced at the trial.    The defendant below gave no evidence to the jury bearing upon this question, and having carefully examined that given on behalf of the plaintiff, we think it fully sustains his position,

that he was deprived of a substantial right materially affecting the value of his property.

The same conclusion upon the testimony is reached by us regarding the injury claimed to be caused by the flowage of the water from the surface of the fill through the spouts emptying into Church street, constructed by the company to carry off such surface water.

Indeed, appellant does not deny the claim of the appellee that he thus sustained injury to his property, but it is urged that there is no evidence that the city authorized or permitted the filling in of the streets and alleys, the erection of the fence, or the construction of the spouts which caused the damage. It will be noticed that the object of vacating the streets and alleys running north and south between Front and Fourth streets and connecting Church street with Trendly street, was to give the railroad company depot and track grounds unobstructed by street and alley crossings; and by the same ordinance the company was permitted to enter upon and take possession of the streets and alleys vacated for such uses and purposes. The ordinance provided for the filling and grading of Front and Trendly streets adjoining the depot grounds, by the railroad company, to a convenient grade to be established by the city free of expense to it; and further that the company should lay its tracks upon a grade to be likewise fixed by it. The evidence is that Front and Trendly streets and the depot grounds were filled up to practically the same grade by the company, and the tracks laid upon such grade. From these provisions of the ordinance it is seen that the city reserved to itself the right of determining the grade of the proposed filling of the said streets, and that upon which the company should place its tracks, and when the grading has been done and the tracks laid, and no evidence appears in the record that the work was done in a manner contrary to the desires or the direction of the city, we must presume that the city not only permitted but authorized it thus to be done. If the presumption is to prevail that a ditch dug by the side of a public street was done by authority of the city, when no ordinance or order providing for any work to be done was

City of East St. Louis v. O'Flynn.

shown, as in Chicago v. Johnson, 53 Ill. 91, or that a ridge of dirt extending into a street was placed there by like authority, as in Chicago v. Brophy, 79 Ill. 277, such presumption becomes much stronger when it is shown, as in this case, that the city reserved to itself the right to control the manner in which the privilege conferred should be exercised. The jury were justified in inferring that the city had established the grade and permitted the work to be done in the manner it was done. It is urged that error was committed in allowing witnesses to give their opinion as to the amount of damages done to plaintiff's property, without first showing they were acquainted with the value of the property. This position is fully answered by the case of Spear v. Drainage Commissioners, 113 Ill. 632, where such opinions were held competent upon like questions. The plaintiff stated as a witness that the railroad company had taken the dirt to make the fill from a pit north of his premises, and that such pit prevented his egress from his premises in that direction and that and the water flowing upon his land had injured it. A motion was made to strike from the record all claims for damages arising from taking such dirt and for the injury by the water, which the court refused, and this is urged as error. If the motion had been confined to the making of the pit, the court would probably have sustained it, as no claim for such damages is averred in the declaration; but as the testimony concerning the flowage of the water was competent, the motion was too broad and no error was committed in disallowing it.

It is next urged that the wife of the plaintiff was allowed to testify in his behalf over the objection of the appellant, and was allowed to state her opinion of the damages to the premises. We are of the opinion this was erroneous, and if there was any conflict in the testimony as to the amount of such damages, we should be inclined to award a new trial; but the appellant did not contest this question by any proof whatever, introducing no witnesses on its behalf, while the plaintiff introduced some seven witnesses, exclusive of his wife, whose testimony is amply sufficient to sustain the verdict; in fact, if any liability existed the verdict could not have been for a less

amount upon their testimony. From this it appears that the error worked no injury to the appellant, and is not, therefore, sufficient to reverse the judgment.

The plaintiff asked for no instructions to the jury and the defendant asked but two, the first of which was refused and the second given. The first requested the court to direct the jury to return a verdict for the defendant, which for the reasons stated heretofore, was properly refused. The second directed the jury not to allow the plaintiff for any damages caused by any act of the railroad company not authorized by the ci:y, from which it would appear that the jury found that the city had consented to, or authorized the act, and as we have seen there was evidence tending to show such fact, there is no just ground for complaint.

We think the verdict is sustained by the proofs and does substantial justice between the parties, and the judgment entered thereon will be affirmed.

Judgment affirmed.