## Watson Cut Stone Co. v. William Small.

1. INSTRUCTIONS—*Parties—When Estopped by Asking.*—A party is estopped from complaining of an error in his adversary's instruction, where he has asked the court to commit the same error in his own instructions.

**Trespass on the Case,** for personal injuries. Trial in the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the October term, 1898. Affirmed. Opinion filed March 16, 1899.

Appellee, an experienced stone cutter, was injured January 26, 1896, by the falling upon him of part of a defective or broken corbel stone which extended under the projection of a series of bay windows, commencing at the top of the first story of a six story building at Ellis avenue and Thirty-fifth street, Chicago, while he was engaged in the employ of appellant in cutting out a piece from the stone to put in another piece and thus repair it.

The building was a new one, completed in the fall of

1895, and appellant had the contract for furnishing and setting the cut stone work, including this corbel stone. It employed as sub-contractors the firm of Howarth & McBeth to set the cut stone, and this firm actually did the work of setting this corbel stone, under the superintendence of appellant. Appellee had nothing to do with the original construction of the building, but was called in by appellant, in January, 1896, to repair this corbel stone, it having begun at that time to crack in one or more places, and one piece of it had fallen out before he begun the work of repair.

Appellee's original declaration consists of five counts, the first, third and fifth of which were dismissed by appellee, and the second and fourth are based upon negligence of appellant in not properly supporting and fastening the corbel stone. Three additional counts were filed November 7, 1897, all which alleged negligence in original construction or material used therein.

Three other additional counts were filed December 7, 1897, the first of which is based upon the failure of appellant, knowing the danger to which appellee was exposed at his work, to notify him of such danger, and alleging that appellee did not know of the danger. The second and third of these additional counts charge, in different ways, negligence in the original construction of the building.

Appellant pleaded the general issue.

A trial was had November 16, 1897, during the course of which appellee dismissed the first, third and fifth counts of the original declaration, which resulted in a verdict on the remaining counts of that declaration and the counts of November 7, 1897, in favor of appellee, of $1,000, which was set aside by the court and a new trial awarded.

A second trial was had on these counts and the additional counts filed December 7, 1897, which resulted in a verdict and judgment for appellee of $1,500, from which this appeal is taken.

At the close of plaintiff's evidence, defendant asked an instruction to find it not guilty, which was refused. Defendant then asked seven separate instructions, directing

the jury to find it not guilty as to each of the several counts then before the jury, except the third count of December 7, 1897, each of which was refused. Each of these same instructions was asked at the close of all the evidence and refused by the court in the same order as at the close of plaintiff's evidence.

Among other instructions, not in question, at the instance of appellee, the court gave the following, viz.:

"18. The court instructs the jury that the law is, that where a contractor sublets a part of the work which he is to perform to another, and the sub-contractor in the execution of the work so let to him is superintended and controlled by the contractor, and the work is performed negligently by the sub-contractor, then the negligence of the sub-contractor is also the negligence of the original contractor, providing the part of the work performed negligently is performed under the supervision and direction of the original contractor;"

but refused to give, as requested by appellant, the following, viz.:

"32. If you believe from the evidence that the accident in question happened through the negligence of independent contractors who sublet from the defendant, the Watson Cut Stone Company, the setting of the stones in question; and that the said contractors were reasonably competent and skillful for the performance of said work, then your verdict will be not guilty."

AMERICUS B. MELVILLE and F. J. CANTY, attorneys for appellant.

WILLIAM C. SNOW, attorney for appellee; DARROW, THOMAS & THOMPSON and D. J. DOWNEY, of counsel.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

Appellant contends that appellee assumed the risk of the danger to which he was exposed, and if he did not, he was guilty of contributory negligence; that the court erred in refusing the several instructions noted in the statement, and

in giving appellee's eighteenth instruction.   We are inclined to the view that the evidence is not sufficient to sustain the judgment under either of the several counts on which the case was submitted to the jury, except the first additional count filed December 7, 1897, which is based upon the failure of appellant to notify appellee of the danger to which he was exposed while engaged in his work for appellant; but however that may be, we are of opinion this can not now be urged as a cause for reversal, because appellant asked the thirty-second instruction upon the theory it was not liable for any negligence charged, and the court gave, at its instance, several instructions, in which is submitted to the jury the question of any and all negligence charged against it.   Jeffrey v. Robbins, 73 Ill. App. 362; Egbers v. Egbers, 177 Ill. 89.

This fact, we think, also eliminates from the case any question of independent contractor which is made by appellant; but even if this were not so, the clear preponderance of the evidence is against appellant on this point.   A verdict for appellant, based on the theory of independent contractor, could not be sustained by the evidence.

The evidence shows that appellee is an experienced stone cutter and familiar with the manner of construction of such buildings as this one.   He testified in part, viz.:

" I went to the building, and the scaffold had been partly erected.   Mr. Beck and I finished the balance of the scaffolding at 35th street and Ellis avenue; then he showed me what he wanted me to do, and I looked up at the hole in the stone and asked him what was the cause of that breaking away.   The break was in the corbel on 35th street.   I asked him if there was any weight on the nose of the corbel stone, and he said there was not.   He said he had the mortar all sawed out.   I said, what made that piece fall away there.   And he said the stonecutter in drilling that anchor hole in there, the piece broke away and came down. So he said the stonecutter strained the stone when he was drilling for the anchor.   The anchor is a piece of iron about an inch in diameter.   It came down from the floor above. I don't know what it was fastened to, but it came down and was let into the corbel stone about three or four inches

to sustain the weight of the corbel from falling out in the street.

Q. And was it fastened below—screwed in ? A. No, it was leaded. Boiling lead was run around the iron. I asked him then, the second time, about the mortar. I asked him if there was any mortar in that stone around the top of the corbel stone, and he said no, he had it all sawed out, and there was nothing in there at all. There is no weight on that, he said. The wall is faced with stone, and behind is brick work that is carried up.

The Court: The wall is really brick, and faced with stone ? A. Yes. The brick work is about eighteen inches thick. The first story is called the basement. It is about fifteen feet to the top of the corbel stone. The corbel is above the first story."

It is shown from this and other evidence, that appellee was familiar with the ordinary methods of construction of such buildings, and that he suspected that the cause of the break in the corbel stone was because the mortar, which should have been placed between the corbel and ashler stone above at the time of the construction of the building, had not been removed, as should have been done in a proper construction.

Appellee also says that the seam or joint between the corbel stone and ashler above it, was about eighteen inches above him; that he could not see it from where he was working below, and the evidence shows that while he was so working, the corbel stone gave way, broke down the scaffolding on which appellee was at work, and injured him.

Whether or not this mortar had been sawed out from between the corbel stone and ashler, as represented by Beck to appellee, was a question in dispute, on which there was a conflict in the evidence. There was also a question, on which there was a conflict in the evidence, as to whether the failure to saw out the mortar, if such was the fact, was a sufficient cause to account for the giving way of the corbel stone, and also whether that was what caused it to give way and fall.

From a careful consideration of the evidence in these respects (which it seems unnecessary to set out in detail),

we think it justified the jury in finding, as it must have done, that the mortar was not sufficiently sawed out to prevent a pressure of the ashler stone from above on the corbel, and that that fact was a sufficient cause for, and did cause, the giving way of the corbel stone, and the consequent injury to appellee.

The questions of assumed risk and contributory negligence so thoroughly and fully presented by appellant's counsel, were, in our opinion, under the facts of this case, purely questions of fact for the jury, and not of law for the court. We do not, therefore, review the numerous cases cited, believing, as we do, that there was no error in submitting the case to the jury, at least upon the first of the amended counts of December 7, 1897.   Offutt v. World's Col. Exp'n, 175 Ill. 472, and cases there cited.

Appellee had the right to rely on what Beck told him in regard to the mortar being sawed out, and it was not negligence, as matter of law, for him to continue his work after this statement from Beck, when appellee was not in a position to see the danger.

Objection is also made to the admission of certain evidence relating to the manner of construction of the building and its effect upon the corbel stone in question, but we do not think it of importance, and there was no reversible error in the court's rulings in this regard.

The judgment is affirmed.