# The City of Chicago v. John A. Spoor and H. Walter Webb.

1. Appellate Court Practice—*Duty of Counsel in Preparing Briefs.*—It is not enough for counsel to say in his brief that the court erred in giving a specific instruction, or in the admission or exclusion of certain evidence, or that the judgment is excessive, or that the court should have sustained a motion for a new trial, but he should show how or in what way the particular ruling of the court was erroneous.

2. Cities and Villages—*Liability for Damages Resulting from the Construction of a Viaduct.*—The fact that a viaduct is constructed under and by the order of a city council is sufficient to fix the liability of the municipality for any damages resulting to property therefrom.

3. Same—*What is Sufficient to Fix the Liability.*—It is sufficient to fix the liability of the city that such viaduct was constructed by means of or through the action of the common council.

4. Same—*Presumptions from the Erection of a Viaduct in the Streets.*—The fact that such a structure as a viaduct exists in the streets of a city is, of itself, presumptive evidence that the city is responsible for its erection.

5. Same—*When Bound by the Unauthorized Acts of Officers.*—The unauthorized acts of municipal officers are regarded as the acts of the corporation, provided such acts are performed by that branch of the municipal government which is invested with jurisdiction to act for the corporation upon the subject to which the particular act relates.

6. Trials—*Remarks of the Trial Judge to Counsel in the Presence of the Jury.*—Where certain remarks of the judge to counsel in the presence of the jury, during the progress of a trial, in admitting and excluding evidence, are improper, such impropriety is cured by an instruction at the close of the trial directing the jury not to consider any remarks of the court or counsel made during the progress of the trial, or in the decisions of the court in admitting or excluding evidence.

7. Practice—*Where the Jury Make a Personal Inspection of the Premises.*—In actions for the recovery of damages to property taken or damaged in the construction of public improvements, where there is a diversity of opinion and conflicting testimony among the witnesses as to the value of the property, and the jury make a personal inspection of the property in question, the Appellate Court will not reverse the judgment on the grounds that the damages are excessive or inadequate, or that the evidence does not support the verdict, as the jury have a right to base their verdict, to some extent, upon their own examination of the property.

8. Estoppel—*To Complain of the Rulings of the Court.*—Where a party brings before the jury, by his cross-examination, an improper ele-

City of Chicago v. Spoor.

ment of damages, he can not be heard in the Appellate Court to complain of the rulings of the trial court, if such improper element of damages was brought to the consideration of the jury by his own action.

**Action to Recover Damages to Real Property,** by the construction of a viaduct. Appeal from the Circuit Court of Cook County: the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the March term, 1900. Affirmed. Opinion filed October 29, 1900.

**Statement.**—Appellees brought suit in the Circuit Court against appellant to recover damages which they claim to have sustained to lots 25 to 29, both inclusive, and lots 31 to 34, both inclusive, in block 12, in Superior Court partition, said lots fronting west on South Halsted street, by the building of a viaduct on South Halsted street at Forty-first street, in the city of Chicago, a trial of which before a court and a jury resulted in a verdict in favor of appellees of $10,750, on which the court rendered judgment, from which this appeal is taken. It appears that the jury viewed the premises in question. The evidence upon the question of damages claimed is very voluminous and conflicting, the witnesses called for plaintiffs (five in number) placing the damages to plaintiffs' property by reason of the construction of the viaduct at from $11,250 to as high as $28,125; while four witnesses on behalf of appellant testified that in their opinion the property was increased in value, one placing the increase at $2,250, another at $2,250 to $4,500, a third at $3,375 to $5,062, and the fourth at $7,087.50, and two other witnesses on behalf of appellant testified that there had been an increase in the value of the property by reason of the construction of the viaduct, though they did not state the amount of such increase—merely that it would sell more readily immediately after the construction of the viaduct for the same price that they gave it as their opinion that it was worth immediately before the viaduct was built, viz., $150 per front foot. Four of appellant's witnesses also testified, in substance, that there had been a general depreciation in the values of real estate following the year 1893, including the property in question, some of them placing such depreciation at twenty-five per cent and as high as

sixty-five per cent, and that, notwithstanding such general depreciation in real estate values, the effect of the building of the viaduct upon plaintiffs' property was to leave it worth as much after the construction of the viaduct as it was before.

Among other instructions given on behalf of plaintiffs are the following:

2. "You are instructed that it is utterly immaterial whether the plaintiffs in this case are poor or rich men, or whether the defendant, the city of Chicago, is bankrupt, or its treasury full of funds. No facts of this character should be considered by you in any respect whatsoever in determining whether or not the plaintiffs' property has been damaged by reason of the elevation and construction of the public work described in the declaration and in the evidence in this case. If you should find from the evidence that the plaintiffs' property had been damaged by reason of such work, then the plaintiffs are entitled to have a finding in this case against the defendant, whether the plaintiffs be rich or poor, or whether the city of Chicago be bankrupt or otherwise.

3. "The court instructs the jury that the Constitution of the State of Illinois provides that 'private property shall not be taken or damaged for public use without just compensation.'

If you believe from the evidence in this case that the property of the plaintiffs described in the declaration has been depreciated in value by reason of the erection and construction of the viaduct on Halsted street and the elevation of the grade of Halsted street and Forty-first street in front of and alongside of the plaintiffs' property, then you are instructed that the plaintiffs are entitled to recover of and from the city of Chicago the amount of the depreciation in value so sustained by them to the property aforesaid, as shown by the evidence, and you should find the defendant guilty and assess the plaintiffs' damages at such sum as will compensate them for the depreciation in value so sustained."

On behalf of appellant, among the instructions asked and given were the following, which were refused, but subsequently given as modified, the modifications of the court being in italics, viz.:

5. "The jury are instructed that in arriving at your verdict you are not entitled to consider any depreciation in

the fair cash market value of the plaintiffs' lots due to the construction of the viaduct, even if you find from the evidence that such depreciation has taken place, which has been caused by its effect in lessening the extent of the business which the jury may believe from the evidence would otherwise be done upon said lots, if buildings should in future be constructed thereon, produced by the character and extent of the present or future travel and traffic by the general public upon Halsted street in front of the plaintiffs' lots, for the court instructs you that among the reasons therefor such supposed effects are too remote and speculative to be made the basis of damages herein, and also can not be made the basis of any recovery in this action. *What the future may develop respecting the value or use of this property can not be considered by you, whether an advantage, or disadvantage. Your province is to determine from the evidence and your view of the premises whether or not the fair cash market value of the property was worth less after the viaduct was constructed by reason thereof than it was before it was constructed; if so, you should find for the plaintiffs, and if not, your verdict should be for the defendant."*

7.   "The jury are instructed that the plaintiffs herein are not entitled to recover because of any alleged injury resulting to the fair cash market value of said premises, because of any alleged diversion of traffic off from Halsted street in front of said premises by the construction of said viaduct, even if they believe from the evidence that any such diversion of traffic has in fact resulted from such cause.  *But if you believe from the evidence, including your view of the premises, that the fair cash market value of the premises was decreased by reason of the obstruction to the ingress and egress thereto caused by said public improvement, this would be an element of damage if such obstruction is shown by the evidence, including your view of the premises.   Diversion of traffic as a result of public improvement is an element of damage which is considered in law too remote and speculative to become the basis of recovery in a suit wherein a person seeks damages or loss of profits to his business from the author of such improvement, because it would be impossible to ascertain how many persons were diverted from this accustomed route by reason of the improvement alone and how many from other causes or from mere caprice. But if a public improvement depreciate the value of abutting property then every element which the jury may find from the evidence and its view of the premises, which directly affects the*

*market value of the property by reason of the public improvement, so as to make it of less value upon the market after such public improvement than it was before, is proper for the jury to consider in a suit where the question is not as to loss of profits to business, but for damage to abutting property.*"

At the close of all the evidence, counsel for appellant moved the court to instruct the jury to render a verdict for the defendant, which motion was overruled. It does not appear that any written instruction was presented or asked to be given by the court at this time, though such an instruction was asked along with the other instructions on behalf of appellant, submitting the case to the jury.

CHARLES M. WALKER, corporation counsel, and THOMAS J. SUTHERLAND, attorneys for appellant.

WINSTON & MEAGHER, attorneys for appellees; SILAS H. STRAWN and RALPH M. SHAW, of counsel.

MR. JUSTICE WINDES delivered the opinion of the court.

Counsel for appellant, besides numerous points specially relied upon in his brief and argument, adds thereto seventy-seven different points under the heading of "Errors relied upon," by reason of which he claims the judgment should be reversed. No argument is made in support of many of these seventy-seven points, and under repeated decisions of this and the Supreme Court the points not argued must be considered as waived. It is not enough for counsel to say in his brief that the court erred in giving a specific instruction or in the admission or exclusion of certain evidence, or that the judgment is excessive, or that the court should have sustained a motion for a new trial, but he should show how or in what way the particular ruling of the court was erroneous.

The complaints of counsel, which are more or less specific, as to alleged error in the record, are so numerous that to refer to them and discuss them in detail would extend this opinion beyond all reasonable bounds, impose a need-

less and useless burden upon the court, and in our opinion could serve no beneficial purpose. It seems sufficient to say, in this connection, that we have carefully considered all the specific contentions of counsel, and except as they are below particularly mentioned, we think they could not be sustained.

It is claimed for appellant, that the court at the close of all the evidence should have directed a verdict for it, because there was no valid authority shown for the construction of the viaduct in question, and therefore that the city was not liable in damages by reason of its construction.

There was offered in evidence a copy of a resolution of the city council, dated January 6, 1896, and passed on that day, which, after reciting previous orders of the council and certain matters showing the necessity for the viaduct by reason of the crossing at grade of the railroad tracks of the Union Stock Yards & Transit Co. and the introduction of electric cars by the Chicago City Railway Co. on Halsted street, by which the mayor and commissioner of public works are directed to cause plans to be forthwith prepared for the viaduct in question, and to let the necessary contracts for the construction of the same upon obtaining from said two companies, or either of them, an agreement to provide all moneys required to meet such contract. It was stipulated on the hearing between counsel that the construction of the viaduct under said order was commenced about the middle of February, 1896, and was completed about the end of September, 1896.

This order of the common council and the stipulation that the viaduct was constructed under the order, is sufficient, in our opinion, to fix the liability of the city of Chicago for any damages to appellees' property resulting therefrom, and it is immaterial, as contended for appellant, that it was not shown that any ordinance was passed by the common council for the construction of the viaduct, nor that the viaduct was constructed under a contract executed with the city, nor whether the money to pay for the viaduct came from the city treasury, nor that an appropria-

tion had been made to pay for the cost of the work. The authorities cited by counsel for appellant in this regard are inapplicable. It is sufficient to fix the liability of the city that the viaduct in question was constructed by means of or through the action of the common council. City of Chicago v. Turner, 80 Ill. 419, and cases cited; City of Chicago v. C. & W. I. R. R. Co., 105 Ill. 73; Culbertson, etc., Co. v. City of Chicago, 111 Ill. 651.

Indeed, when such a structure as a viaduct is found in the streets of a city, that of itself is presumptive evidence that the city is responsible for its erection. City of Chicago v. Johnson, 53 Ill. 93; Village of Jefferson v. Chapman, 127 Ill. 446.

In the Turner case, *supra*, it was said (referring to the case of City of Pekin v. Newell, 26 Ill. 320), "If a city is authorized to construct a highway in a particular manner, but does it in a different one, it will be answerable in damages to a party sustaining injury upon it, as much as though it had not exceeded or deviated from its authority. So, there, also, there was no question of power, but only as to the lawfulness of its execution," and held that a municipality is liable for its acts within its general power, though irregularly authorized or done.

The same principle is announced in the second case above cited, 105 Ill. 85, in the following language :

" We recognize the doctrine to be, that the unauthorized acts of municipal officers are regarded as the acts of the corporation, provided the acts are performed by that branch of the municipal government which is invested with jurisdiction to act for the corporation upon the subject to which the particular act relates."

In the Culbertson case, *supra*, which was an action upon the case for damages in consequence of the construction of a viaduct which was partly paid for by a railway company and the work done under the joint superintendence of the department of public works and the engineer of the railway company, it was held that the company was not liable for damages sustained by adjacent property owners, and that the improvement was the property of the city, that it alone

City of Chicago v. Spoor.

was liable for damages to the property owner, as it alone had power to go upon the street and erect the viaduct. It is not and can not be successfully contended that the city had ample power to construct this viaduct.

For appellant it is claimed that the trial court erroneously refused to allow it to be shown, on the cross-examination of the appellee Spoor, whether he claimed damages for other lots owned by appellees in the same block as those for which the suit was brought, some fronting upon South Halsted street and immediately south of the lots in question, and the others fronting on Emerald avenue and separated from the lots in question by an alley sixteen feet wide; also in refusing to allow appellant to show by witnesses called for the defense that those same lots south of the lots in question on Halsted street and the lots fronting on Emerald avenue were benefited by the construction of the viaduct in question.

So far as concerns the lots on Halsted street, south of the lots for which damages are claimed, there was no evidence offered, either on the cross-examination of Mr. Spoor or by appellants' witnesses, so far as shown by the record, and therefore that part of the contention need not be further considered.

As to the lots fronting on Emerald avenue, we are of the opinion that the evidence was properly excluded, because it is wholly immaterial in this case what benefits, if any, were caused by the construction of the viaduct to the lots on Emerald avenue, they being separated from the lots in question by an alley sixteen feet wide.

It was held in the case of White v. West Side El. R. R. Co., 154 Ill. 620-6, that where a railroad company sought to condemn a part of a lot in one block and the defendant, by cross-petition, sought to collect damages to another block owned by him, and separated by a street thirty feet wide from the lot sought to be condemned, no such damages could be allowed. The court say :

" But it is said the two tracts of land were purchased to be used for one purpose, as one tract of land. Whatever

may have been the intention or purpose in purchasing the two tracts of land can make no difference. The two tracts of land must be considered as they existed when the proceeding was instituted, at the time they were separated by a public street. They were in no manner connected and never could be connected without the consent of the city, which may never be obtained. They were not used for any common purpose as one tract of land. Two tracts of land might be so connected and used as to constitute but one tract, and in such a case in a proceeding to condemn a part, it would be proper to consider the damages to the whole. But this record presents no such case."

To like effect in principle is the case of Met. West Side El. R. R. Co. v. Johnson, 159 Ill. 434–6.

We see no reason why the principle of these cases is not applicable here. Appellant can in no way be concerned as to any alleged benefit which is claimed to have accrued to appellees as to lots owned by them, not shown to be used so as to constitute one tract, but separated from the lots in question by a public alley. If such were the law, appellant could claim the right to set off any benefits accruing to property, however remote from the property which appellees claim to be damaged.

It is claimed that appellees have been allowed damages to their property by reason of what counsel for appellant terms a diversion of traffic from South Halsted street, and therefore that the evidence of certain witnesses in their behalf should have been excluded from the jury.

The witnesses called for appellees testified on their direct examination as to their opinion of what the damage was to appellees' property by reason of the construction of the viaduct in question and by that alone. They were asked no questions whatever as to the several elements on which they based their opinion as to said damage. Plaintiffs nowhere, in making their case, claimed or sought to show as an element of their damages that there had been any diversion of traffic from Halsted street and from the front of their property. In fact, Mr. Spoor, one of the appellees, said, on his cross-examination, that he did not think there had been any diversion of travel from the property if the traffic that

goes on the cars was considered; that there was probably more travel on Halsted street than before the viaduct was put up, but it was all through travel, and that he did not say that a part of the damage to the lots in question had resulted by the diversion of traffic, and explained that the property after the construction of the viaduct was upon grade; that it was impossible for wagons or anything to stop on the approach to the viaduct; that the street cars ran very rapidly over it, and, before the viaduct was built, people who came from the stockyards, the main entrance of which was very near to his lots, came out upon the street to this property, which was occupied for shops and business purposes, and which the viaduct had made it impossible to use; that the viaduct had placed a stone wall there in front of plaintiffs' property, which shut off the movement of people in the direction of plaintiffs' property from the stockyards. On re-cross examination of this same witness, counsel for appellant asked the witness if he could divide up the damage that had come to this property by reason of the construction of the viaduct, so that he could tell what part of the damage came from the diversion of trade and what had resulted from other causes, to which the witness replied that he could not tell, and could not testify any amount.  Counsel for appellant then moved to strike from the record the testimony of the witness as to the depreciation of the market value of the property by reason of the construction of the viaduct, because any damage by reason of the loss or diversion of traffic from the street caused by the construction of the viaduct could not be recovered.  The motion was overruled, and, in our opinion, was properly overruled. City of Chicago v. Jackson, 88 Ill. App. 133.

It is true, as held in the case of Hohman v. City of Chicago, 140 Ill. 226–30, that diversions of customers from the plaintiffs' saloon was not an element of damage for which there could be a recovery, but it was not claimed in that case that access to plaintiffs' premises was cut off, as it is claimed in the case at bar, which the court held was a matter which it was proper for the jury to consider in determining

whether the plaintiff was entitled to damages. The appellant was entitled to show, on cross-examination, all the elements on which the witness based his opinion as to the damages caused by the construction of the viaduct, and if it appeared, from the cross-examination, that in part the opinion of the witness was based upon matters improper for the jury to consider, that did not render the whole of the witness' evidence improper. In so far as the opinion of the witness was based upon an improper element of damage, that could be controlled by an instruction to the jury, which was, in this case, asked in the fifth and seventh instructions for appellant, which were given in a modified form, and which, in express terms, tell the jury that there could be no recovery of damages in the case by reason of the diversion of traffic as a result of the improvement, and that the jury were to determine, from the evidence and their view of the premises, whether or not the fair cash market value of the property was less after the viaduct was constructed by reason thereof, than it was before it was constructed, and if it was less, then their verdict should be for the plaintiffs, and if not, their verdict should be for the defendant.

Moreover, as we have seen, the main contention of appellant was, that instead of there being a diversion of traffic caused by the construction of the viaduct, it produced six witnesses, at least, who testified that the traffic in front of the property had been greatly increased, and therefore that the value of plaintiffs' property had been increased by reason of the construction of the viaduct, and it asked, and the court gave instructions directing the jury, that it had the right to consider the increase in traffic upon the street as an element of benefit to the property in question.

Appellant thus having brought before the jury by its cross-examination of appellees' witnesses the element of diversion of traffic from plaintiffs' property, and having attempted to show by its own witnesses that there had been a great increase in traffic upon the street in front of the property, can not now be heard to complain of the rul-

ings of the court if an improper element of damage was brought to the consideration of the jury by its own action. Jeffrey v. Robbins, 73 Ill. App. 353; R. R. Co. v. Wedel, 44 Ill. App. 215; Chicago, etc., Co. v. Major, 30 Ill. App. 276-9; Watson Cut Stone Co. v. Small, 80 Ill. App. 328, affirmed 181 Ill. 366; Moyer v. Swigert, 125 Ill. 262-77; R. R. Co. v. Latimer, 128 Ill. 163-71.

Numerous other points are made by counsel as to the rulings of the court in refusing to exclude from the jury the evidence of other witnesses of appellees on the matter of diversion of traffic, but what has been above said in our opinion applies to these rulings with reference to these witnesses, and need not be here repeated.

Counsel for appellant attempted to show by the cross-examination of plaintiffs' witnesses the values of property in the vicinity of the property in question, and on other streets, but the evidence was ruled out. We think the matter was within the discretion of the court, and there was no error in excluding such cross-examination, and especially is this true, because great latitude was given to counsel by the court in the cross-examination of the witnesses, in order to show their experience and the basis upon which they formed their opinions as to the damage to plaintiffs' property.

It is claimed that the court erred in refusing to allow appellants' counsel to prove by one of its witnesses what the cost of the lots in question was at the time of their purchase by appellees in September, 1894, taking as the sole basis of such cost the total consideration named in the deed by which they acquired title to numerous other pieces and parcels of land, besides the lots in question. The witness was in effect asked to apportion the total cost to the different lots. There was no error in this respect It did not appear that the witness knew anything whatever as to the separate valuations put upon the lots in question by the parties to the deed, as distinguished from other property conveyed by the deed, and the consideration named in the deed was a lump sum for the property described therein.

It is further claimed that the court erred in refusing to

allow appellant's counsel to prove that there had been a general depreciation in the value of property in the city of Chicago since the year 1893, to the extent of from twenty-five to sixty-five per cent. We think there was no error in this regard, because the proposed evidence was in no way limited to a time at or near the period of the construction of the viaduct.

The claim is made that serious detriment was caused to the interests of appellant by divers remarks of the court to appellant's counsel in the course of the trial, by way of comment upon his conduct in the trial, the character of the evidence introduced and sought to be introduced on behalf of the city, and in other respects, which, it is claimed, were calculated to prejudice the jury as to the defense made by the city.

It is impossible to reproduce in this opinion, without unduly extending it, the many different remarks of the court complained of and the proceedings and language of counsel leading up to the same. It seems sufficient to say that we have carefully read the portions of the record referred to in the abstract and briefs of counsel for both sides, and have reached the conclusion that the language and methods of counsel for appellant were calculated to annoy and irritate the trial judge, and while some of the court's remarks to appellant's counsel in criticism of his conduct and commenting upon certain evidence offered and admitted, were improper, they were caused by his annoying and harassing methods in repeatedly persisting in his efforts to get before the jury evidence which the court had repeatedly ruled was improper, and also by interposing over and over again objections to evidence which the court had overruled from time to time, and in delaying the progress of the trial by arguments of such objections after the court had ruled thereon.

It appears, from the record, though not abstracted nor referred to in any of the briefs, that the hearing of the cause, after it had proceeded for two days, was adjourned from day to day for three consecutive days, because of the

sickness of the trial judge.   The court in the course of the
trial, when appellant's counsel objected to the remark of
the court that he was " getting a lot of immaterial issues "
before the jury calculated to mislead them as to the true
issue of the case, the court replied that the jury was not to
consider anything said by the court except when he was
excluding evidence or something like that—that the court
was addressing its remarks to counsel.   Also, at the request
of appellant's counsel, the court instructed the jury, by
instruction No. 24, that it was not to "consider any
remarks of court or counsel during the introduction of the
evidence in the course of the trial, or exceptions or objec-
tions made or taken by counsel upon either side, or the
decision of the court upon any motions made by either of
such counsel during the course of the trial, or decisions of
the court in refusing to admit evidence offered by either
side."   And the court added to the foregoing instruction
the following words, viz.:

" The jury should ignore every consideration other than
a desire to do right between the parties to this suit.   It
would be highly improper for you to consider in any man-
ner or to permit your judgments to be influenced by any-
thing said by the respective counsel to each other or by
either counsel to the court, or by any remark made by the
court to either one of the attorneys in this case.   A court
has no enemies to punish or favorites to reward in a lawsuit,
and this jury, I am convinced, will use their conscientious
and best efforts to arrive at a verdict which will be based
upon the evidence, aided by the instructions of the court as
given you in writing.   Anything said by the court in dis-
cussing with counsel questions respecting the admissibility
of evidence was not intended for your hearing, as the
instructions which the court intends for the jury must be in
writing, and it is your solemn duty to ignore oral remarks
of the court, if heard by you, and to follow and be gov-
erned by this series of written instructions."

From all the foregoing considerations, we are of opinion
that there was no prejudicial error from the remarks of the
court to counsel, and that no injury was done to the inter-
ests of appellant by its remarks during the course of the
trial.   We think that the trial judge endeavored to be fair

and just as between the parties, and if any injustice was done, it must be attributed to the course of appellant's counsel in the trial, and of this there can be no just cause of complaint.

It is said that there was error in the giving of appellees' second instruction, which is quoted in the statement preceding this opinion, because there was no proof that appellees were poor or rich men, or that the city of Chicago was bankrupt or otherwise. The evidence tends to show that appellees were rich men, but the instruction was given, no doubt, because of the statement of appellant's counsel to the court when he attempted to prove on the cross-examination of the appellee Spoor, that the appellee Webb was a director in a corporation, that plaintiffs' counsel had gone into the pedigree of Spoor, and that he ought to be permitted to go into the pedigree of his joint owner, and to show his relation in business up to that time by cross-examination, to which the court replied that it was "immaterial in this court whether Mr. Webb is a millionaire or the meanest pauper in America." It is well and generally known that the city of Chicago has control of great wealth, and no evidence in that regard was necessary. We think there was no reversible error in this instruction.

It is said that the third instruction should not have been given, because it was an abstract proposition of law, and was prejudicial to appellant. The abstract only shows the first sentence of this instruction, and there is nothing to indicate, either in the abstract or brief of appellant's counsel, that there was any part of the instruction omitted from the abstract. A reading of the omitted part shows the application of the first part of the instruction complained of to the facts of the case, and shows that there could be no reasonable criticism of the instruction as a whole. Such methods are not creditable to counsel in presenting a case to a court of review

And in this connection it may be observed that appellant's counsel has pursued a like course with regard to an alleged erroneous ruling of the court in refusing to permit the wit-

ness, Spoor, to testify what the effect of the viaduct upon the property was by the simple elevation of the grade, independent of effects from other causes. The abstract shows (p. 38) that an objection to this question was sustained. At page 206 of the record, the witness was recalled for further examination, and on page 207 and the following pages of the record, it appears that appellant's counsel was given an opportunity to cross-examine the witness fully, the objections to the particular question, as to which complaint was made that the witness was not allowed to answer, were withdrawn and an opportunity given to have the questions answered by the witness. No reference is made by appellant's counsel in his brief to this part of the record. No other comment is necessary.

It is said that the fifth and seventh instructions asked by appellant and given in a modified form, as appears from the statement preceding this opinion, should have been given as asked, and that the giving of them in the modified form did not cure the error of letting go to the jury the testimony as to traffic and business hereinbefore referred to, the remarks of the court upon the trial and its critical reflections upon appellant's counsel. The instructions and the modifications thereof by the court speak for themselves, and what has heretofore been said, we think sufficiently answers the criticisms of counsel.

Complaint is also made of the fifth, sixth, seventh and ninth instructions given for appellees, and that the fourth, sixth and eighth instructions asked by appellant were refused. We have read all these instructions in connection with the other instructions given both on the part of appellant and appellees, and think there is no reversible error in any of the rulings of the court in respect thereto.

The jury was fully and fairly instructed upon the law relating to the case; the amount awarded for plaintiffs' damages is $500 lower than the lowest estimate made by any of plaintiffs' witnesses; the jury viewed the premises and evidently, from such view and the testimony on behalf of plaintiffs, must have wholly discredited the evidence of appellant's witnesses, none of whom admitted any damage

to the property by reason of the construction of the viaduct, but maintained that it had increased in value all the way from $2,250 to more than $7,000. Such being the case, we think their verdict should not be disturbed. Mitchell v R. R. Co., 85 Ill. 566; Culbertson, etc., Co. v. Chicago, 111 Ill. 651-5; Sanitary District v. Cullerton, 147 Ill. 385-9; R. R. Co. v. Schneider, 127 Ill. 144-9; Davis v. R. R. Co., 170 Ill. 595-600; Cook v. Sanitary District, 177 Ill. 599-605.

In the Davis case, *supra*, the court say :

" It appears that the jury examined the property and heard testimony, and they were authorized to take that testimony in connection with their own judgment into consideration in determining the just compensation; for the rule is, where there is a diversity of opinion and conflict of testimony among witnesses as to the value of the property proposed to be taken or damaged, and the jury have made a personal inspection, this court will not reverse on the grounds that the damages are excessive or inadequate, or that the evidence does not support the verdict, as the jury have a right to base their verdict to some extent upon their own examination of the property." (Citing several cases.)

In the Cook case, *supra*, the court, after stating that the testimony was conflicting and that the jury viewed the premises, the case being condemnation by the sanitary district, say :

" With such a diversity of opinion among the real estate dealers and such a conflict in the testimony, this court would not be justified in saying the evidence does not support the verdict, and especially when the verdict is undoubtedly based upon an examination of the property by the jury, as well as the other testimony in the case."

The judgment of the Circuit Court is affirmed.