Carterville Coal Co. v. Abbott.

## Carterville Coal Co. v. A. Morton Abbott.

81 279
181s 495

81 279
100 ²547

1. STATUTES—*What to be Liberally Construed.*—Statutes providing for the health and safety of persons employed in coal mines are to be liberally construed for effectuating the purposes of their enactment. They are not to be defeated by narrow and forced constructions.

2. SAME—*What is a Willful Violation of the Mining Act.*—A willful violation of the act providing for the health and safety of persons employed in coal mines is any violation of its provisions, knowingly and deliberately committed.

3. ORDINARY CARE—*By Persons Injured in Coal Mines.*—Where a person is injured by reason of a failure of a mine proprietor to comply with the provisions of the act providing for the health and safety of persons employed in coal mines, it is not necessary for him to show that he was in the exercise of ordinary care, as in cases for personal injuries arising from negligence.

**Trespass on the Case,** for personal injuries received in a coal mine. Trial in the Circuit Court of Williamson County; the Hon. OLIVER A.

HARKER, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the August term, 1898. Affirmed. Opinion filed March 10, 1899.

CLEMENS & WARDER and W. W. BARR, attorneys for appellant.

Under the statute on railroads respecting fencing track, after the road has been in operation six months, where a party sues for stock killed, if the liability is predicated on the failure to fence, it must be averred and proven on the trial that the track was not fenced and that the road had been in operation six months prior to the injury to the stock, otherwise a conviction can not be sustained. Galena, etc., R. R. Co. v. Sumner, 24 Ill. 631; O. & M. R. R. Co. v. Meisenheimer, 27 Ill. 30; O. & M. R. R. Co. v. Jones, 27 Ill. 41; Wabash, etc., R. R. Co. v. Neikirk, 13 Ill. App. 387; Toledo, etc., R. R. Co. v. Darst, 51 Ill. 365; Toledo, etc., R. R. Co. v. Miller, 45 Ill. 42; Chicago, etc., R. R. Co. v. Taylor, 40 Ill. 280; Duggan v. P. D. & E. R. R. Co., 42 Ill. App. 536.

" It is an essential element to the right of action in all cases, the plaintiff, or party injured, must himself exercise ordinary care, such as a reasonably prudent person will always adopt for the security of his personal property." And the court, in support of the doctrine announced, cites: C., B. & Q. R. R. Co. v. Lee, 60 Ill. 501; C. & A. R. R. Co. v. Gretzner, 46 Ill. 75; C., B. & Q. R. R. Co. v. Van Patten, 64 Ill. 510.

The law requires the employer to use reasonable care and diligence in providing suitable and safe machinery and appliances for the use of those engaged in his service, but, if the employer fails in this regard, when the employe discovers that the machinery or appliances are unfit for use, or dangerous or insufficient, it is his duty to quit the service of the employer, but if he remains, he does so at his own risk. Pittsburg Bridge Co. v. Walker, 170 Ill. 550; Pennsylvania Co. v. Lynch, 90 Ill. 333; Chicago & Alton R. R. Co. v. Scanlan, 170 Ill. 106; Missouri Furnace Co. v. Abend, 107 Ill. 44; Simmons v. Chicago & Tomah R. R. Co., 110 Ill. 340.

DUNCAN & RHEA, attorneys for appellee.

The allegation that the defendant *negligently* violated this statute would have to be followed by the further allegation and proof that the plaintiff was in the exercise of due care for his safety or the declaration would be insufficient, and the plaintiff's recovery defeated. But when the allegations and proofs show a willful violation of the statute and an injury resulting from such willful violation, all the authorities on this statute are to the effect that contributory negligence is not a defense. Catlett et al. v. Young, 38 Ill. App. 198; The Illinois Fuel Co. v. Parsons, 38 Ill. App. 182; Hawley v. Dailey, 13 Ill. App. 391; The Girard Coal Co. v. Wiggins et al., 52 Ill App. 69; Muddy Valley Mining & Manufacturing Co. v. Phillips, 39 Ill. App. 376; Litchfield Coal Co. v. Taylor, 81 Ill. 590; Bartlett Coal & Mining Co. v. Roach et al., 68 Ill. 174; Wesley City Coal Co. v. Healer, 84 Ill. 126; Niantic Coal & Mining Co. v. Leonard, 126 Ill. 216.

Where an action is brought to recover for an injury resulting from the negligence of another, which is not wanton or willful, it is an essential element to a recovery that the plaintiff must have exercised ordinary care to avoid the injury, but, as we understand the authorities, where the injury has been willfully inflicted, an action may be maintained, although the plaintiff may not have been free from negligence. Litchfield Coal Co. v. Taylor, 81 Ill. 590; Tonawanda Railroad Company v. Munger, 5 Denio, 255; Shearman & Redfield on Negligence, Sec. 37; Sanford v. Eighth Ave. R. Co., 23 N. Y. 343; Illinois Central R. Co. v. Godfrey, 71 Ill. 500; C., B. & Q. R. Co. v. Lee, 68 Ill. 576.

The principle of the responsibility of the willful wrongdoer for all the consequences of his conduct is really an old one. The negligence of one person in carelessly exposing himself to danger is no excuse for another who willfully inflicts an injury upon him. Ill. Central R. R. Co. v. Wren, 43 Ill. 78; St. L., A. & T. H. R. R. Co. v. Todd, 36 Ill. 409; I. & St. L. R. R. Co. v. Galbreath, 63 Ill. 437; C. & A. R. R. Co. v. O'Neil, 172 Ill. 527.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

This is an action on the case for damages alleged to have been sustained by appellee by reason of a willful violation by appellant of certain provisions of Sec. 3 of Chap. 93, Vol. 2, Starr & Curtis' Statutes. The provisions of the statute pertinent to the case are as follows:

Sec. 3. "For all coal mines in this State, when more than six men are employed, there shall be provided and maintained, in addition to the hoisting shaft or opening, a separate escapement shaft or opening to the surface. * * Such escapement shaft shall be constructed in connection with every vein or stratum of coal worked in such mine, and all passageways communicating with the escapement shaft or places of exit from main hauling ways to the escapement shaft shall be at least five feet wide and five feet high. * * * Such escapement shafts as shall be equipped after the passage of this act shall be supplied with stairways partitioned off from the main air-way, and having substantial handrails and platforms, and such stairways shall be at an angle not greater than forty-five degrees; no accumulation of ice shall be permitted in any escapement shaft, nor any obstruction to travel upon any stairways or ladders. The time which shall be allowed for completing such escapement shaft or making such communications with an adjacent mine, as required by the terms of this act, shall be, for mines already opened or in process of development when this act shall become a law, one year for sinking any shaft two hundred feet or less in depth, and one additional year, or *pro rata* portion thereof, for every additional 200 feet or fraction thereof; but for mines which shall be opened after the passage of this act, the time allowed shall be two years for all shafts more than 200 feet in depth, and one year for all shafts 200 feet in depth or less; and the time shall be reckoned in all cases from the date on which coal is first hoisted from the original shaft for sale or use; and it shall be the duty of the inspectors of mines to see that all escapement shafts are begun in time to secure their completion within the time herein specified."

Section 14 of said act gives a right of action for a willful failure to comply with the provisions of the act, and is as follows:

"For any injury to person or property occasioned by

any willful violation of this act, or willful failure to comply with any of its provisions, a right of action shall accrue to the party injured for any direct damages sustained thereby," etc.

- The willful violation of the statute was aptly charged in the declaration, and also averments that plaintiff exercised ordinary case.

Issue was joined upon a plea of not guilty.   Verdict and judgment for appellee for $3,500.

Appellant's defense is, in substance, that appellee was not in the exercise of ordinary care when the injuries were received; and that the evidence fails to prove that appellant employed more than six men in the mine for a year previous to the accident, and that, this not being proved, appellant is not shown to have been within the purview of the statute, and therefore not shown to have been guilty of a willful violation of its provisions.

Counsel for appellant state in their brief, "It must be admitted the escapement shaft in defendant's mine did not conform to the provisions of the statute on that subject."

This clearly appears also from the proof.   The evidence shows that appellee had been in the employ of appellant at its mine in question, as blacksmith, from September 27, 1895, to the end of the year 1896; and then again from March 10, 1897, to the date of his injury, May 13, 1897; that on this day appellant was employing from 100 to 125 men in mining coal in its mine, and that it operated its mine by a shaft about fifty-five feet in depth, and had a separate air and escapement shaft, distant between a quarter and half a mile from the main shaft, northwest.

Appellee, on the 12th of May, 1897, had been directed to repair a certain pump in the mine, not far from the bottom of the air and escapement shaft; and on May 13, 1897, descended into the mine for that purpose, in the forenoon, going down in the cage in the main shaft, which was operated by steam, the machinery at the main shaft being in the charge of William Lockley, engineer.   Appellee found it necessary to return to the blacksmith shop near the top

of the main shaft, to alter some irons used in the repairs, and he and his assistant came out of the mine for that purpose between one and two o'clock, P. M., by the way of the escapement shaft, using the ladders and platforms provided therein. He and his assistant returned to the escapement shaft and descended into the mine by the ladders, and in making this last descent into the mine, appellee fell from the first platform from the bottom, a distance of eleven feet, and in the fall received the injuries charged, his left hip and forearm being broken, etc. The escapement shaft was constructed in the air shaft, and was arranged with platforms from ten to fourteen feet apart. The platforms were connected with each other by ladders fastened at one side of the wall of the air shaft, about twenty or twenty-two inches wide, and resting on platforms about two by five feet wide. There were no handrails to the ladders and platforms, and the ladders stood at an angle of about seventy-five degrees. The dimensions of the air shaft were ten by twelve feet; there was no separation of the escapement shaft from the air shaft.

It is in evidence that the main shaft of appellant's mine was sunk in October, 1889. It is in evidence that coal has been marketed since September, 1895; that an engineer at the hoisting shaft, a pit boss, a pumper, a superintendent, and appellee as blacksmith were employed, and that some of them had been so employed for several years; that the escapement shaft was from a quarter to a half mile distant from the main shaft, and that coal had been first hoisted from the original shaft in January or February, 1890. If necessary then to prove, as claimed by appellant, that more than six men had worked in the mine for more than a year before May 13, 1897, the undisputed proof of the above conditions would sustain the verdict of a jury in finding from these conditions that such fact was proved, nothing to the contrary appearing in evidence. But such proof was not necessary. A correct construction of the statute does not require it. The statute went into effect July 1, 1879. It is entitled, "An act providing for the health and safety of

persons employed in coal mines." Such statutes are to be liberally construed for effectuating the purposes of their enactment. They are not to be defeated by narrow and forced constructions. At the time of the accident more than one hundred men were employed in the mine. It was less than 100 feet deep, and was opened after the statute went into effect. Coal was first hoisted in January or February, 1890, presumably for sale or use. It is directly in evidence that it has been marketed since 1895. The statute provides that for all coal mines when more than six men are employed, there shall be provided an escapement shaft, etc. If the shaft is less than 200 feet deep, it must be constructed within one year, reckoning in all cases from the date when coal was first hoisted for sale or use, not within one year from the date when six men were first employed, as appellant contends.

Was there a willful failure on the part of appellant to comply with the requirements of the statute, and was appellee injured in consequence thereof?

It is said in Catlett et al. v. Young, 143 Ill. 81, " We think it was not error to instruct the jury that by a willful violation of the law is meant a violation of its provisions, knowingly and deliberately committed."

All persons are presumed to know the law. If coal was hoisted for sale or use from the original shaft of appellant's mine in 1890, and the mine worked as indicated by the evidence ever since that date, then the jury was warranted in finding that appellant had willfully violated the provisions of the statute.

Appellee testifies that in descending the shaft with a light, one can not see below him; that the ladders were not partitioned off, and there were no stairways or platforms with hand-rails in the shaft; that the miners, in going out, had scraped or left mud on the lower platform, and that while descending the shaft to repair a pump, when he came to the lower platform he thought he had stepped on the ground, and so fell from the lower platform to the ground, suffering the injuries alleged in the declaration. If there

had been " substantial hand-rails," as required by the stat-
ute, the fair presumption is, and the jury was warranted
in so finding, that he would not have fallen, and that the
injuries were caused by this failure to comply with the
statute.

If the failure on the part of appellant to comply with
the statute was willful, and appellee was injured in conse-
quence thereof, he was not bound to prove that he was in
the exercise of ordinary care, as in cases of negligence not
amounting to wanton or willful negligence.

In Litchfield Coal Co. v. Taylor, 81 Ill. 590, it is said :

" In the case under consideration, it was the willful con-
duct of the coal company of which the plaintiff complained,
and while the deceased may not have been entirely free
from fault, yet if the jury found from the evidence that the
willful conduct of appellant resulted in the injury, the ver-
dict would be justified."

In Catlett v. Young, 143 Ill. 81, cited *supra*, after con-
sidering the statute as originally passed and as amended, the
court say :

" It must be regarded that it (the legislature), acted in
view of the interpretation that more than three years be-
fore had been placed by this court upon said statute of
1872, and upon said section 14, and intended that in case of
injuries occasioned by any willful violation of this act of
1879, or by willful failure to comply with any of its provis-
ions, the right of recovery should not depend upon the
exercise of ordinary care by the person injured, or the
deceased, or be precluded by contributory negligence."

In view of the opinion already expressed, there was no
error in giving appellee's seventh instruction, which is as
follows :

" That if plaintiff did say he fell and was injured as a
result, partly, of his own neglect, yet if the jury believe
from a preponderance of the evidence that the plaintiff's
injury was occasioned by reason of the willful failure of
defendant to partition off the stairway from the main air-
way of the escapement shaft, and provide substantial hand-
rails and platforms for the same, and that such injury
would not have occurred but for such willful failure, then
the verdict should be for the plaintiff."

Instruction No. 6, objected to by appellant, is as follows :

" If the jury find for the plaintiff, and that the pain and suffering was aggravated by reason of a stricture that the plaintiff had at the time of the injury, this would not, in law, prevent his recovery in this case."

This instruction does not appear to have been called for by any phase of the case and might properly have been refused. But its giving is not reversible error, especially as no complaint is made by appellant that the judgment of $3,500, in view of the serious injuries suffered by appellee, is excessive.

Finding no reversible error in the record, the judgment of the Circuit Court is affirmed.