## Tobitha Swigert, Appellee, v. Chicago, Burlington & Quincy Railroad Company, Appellant.

1. RAILROADS, § 315*—*when not liable for construction of levee in public highway.* The construction by a railroad company under the direction and order of the county commissioners of a levee in a public highway over a river does not render such company liable in damages for an injury occasioned either by the construction or by the maintenance of such levee.

2. RAILROADS, § 315*—*when change of course of river by is not actionable.* The purchaser of river·bottom land takes the risk of overflow, and a railroad company cannot be made to pay damages for such overflow simply because it makes a new channel for said river on its right of way, if such channel conveys the water into the old channel before it leaves such right of way and affords equal or better means for escape of the water and brings no more water on said lands than flowed there in a state of nature.

3. RAILROADS, § 315*—*when railroad has right to change or divert current of river on right of way.* A railroad company has a right to build its road through bottom lands and to change or divert the current of a river on its right of way by a new channel if equal or better means for escape of flood waters are provided and the water is returned to its old channel before leaving such right of way.

4. RAILROADS, § 328*—*what is duty of railroad in constructing road along or across streams.* A railroad company has authority under the statute [J. & A. ¶ 8754 (5)] to construct its road along or across streams but must construct necessary culverts and bridges or sluices as the natural drainage requires, and must restore a stream to its former state or to such state as not unnecessarily to have impaired its usefulness.

5. RAILROADS, § 330*—*what is duty of railroad electing to close a natural water course as to providing other channels.* It is the duty of a railroad company which elects to close a natural water course to make new channels of sufficient capacity to carry the water then carried by the natural stream and all that might thereafter lawfully come to or be turned in to flow through such natural channel, but not such flood waters as could not be carried by the natural channel and were accustomed to spread over the entire valley.

6. DAMAGES, § 244*—*when error in receiving evidence is harmless.* Error in receiving evidence to prove damages is harmless where there is no claim that damages awarded were excessive.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

7. Damages, § 244*—*when error in giving instructions on is harmless.* Error in giving instructions as to the measure of damages is not ground for reversal where there is no claim that the damages awarded are excessive.

8. Appeal and error, § 461*—*when assignment of error is not preserved for review.* Assignment of error that verdict is against the weight of the evidence, *held* not preserved for review.

Appeal from the Circuit Court of Johnson county; the Hon. William W. Clemens, Judge, presiding. Heard in this court at the March term, 1915. Reversed and remanded. Opinion filed November 13, 1916.

Spann & Spann, for appellant; J. A. Connell, of counsel.

R. E. Choisser and Lewis & Lewis, for appellee.

Mr. Justice McBride delivered the opinion of the court.

Appellee recovered a judgment against appellant for $550 on account of the depreciation in value of certain farm lands owned by her, and occasioned, as she claims, by the improper construction of the grade or embankment upon which appellant's track is located, adjacent to her land.

A portion of appellee's lands lies in the Cache River Valley, and the gist of each count of the declaration is that said lands were formerly drained by the Cache River; that such drainage kept the lands of appellee free from all injurious and damaging excesses of water; that in constructing its grades and embankments appellant permanently stopped up and obstructed the channel and outlet of said river across its right of way; that by reason thereof, large quantities of water which usually flowed through the basis of said stream were obstructed and diverted over and upon the lands of appellee, and caused to stand and accumulate, rendering her land swampy and unfit for cultiva-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

tion. Certain of the counts also charged that by the action of the water, great holes were washed in appellee's lands.

Appellant assigns as error certain rulings of the trial court in admitting evidence to prove damages, the giving of certain instructions, at the request of appellee, upon the measure of damages, the refusal of the court to give certain instructions submitted by appellant, and that the verdict is contrary to the law and the evidence.

In the present state of the record, we are not called upon to decide whether or not the trial court committed error in receiving the evidence complained of to prove damages, nor to determine whether or not the instructions complained of, upon the measure of damages, were improperly given. It is not claimed by appellant that the damages awarded are excessive, and even if there be error in either of the respects aforesaid, it would constitute harmless error, and would constitute no ground for the reversal of the judgment of the trial court. (*Carterville Coal Co. v. Abbott,* 81 Ill. App. 279.) We are also of the opinion that appellant has not preserved for review in this court its assignment of error that the verdict is against the weight of the evidence. (*Farrell v. Illinois Tunnel Co.,* 177 Ill. App. 425.)

In determining the remaining question presented by this record,—the action of the trial court in refusing instructions tendered by appellant,—it will be necessary to consider the chief facts disclosed by the evidence.

The evidence tends to show that the Cache River Valley where appellee's lands are located is approximately half a mile wide from bluff to bluff, the general course of the valley being slightly northeast and southwest. Adjacent to appellee's lands are two lines of railroad passing through the valley. The C. & E. I. R. R. right of way and track passes down the western

side of the valley, adjacent to the bluff line, a part of its right of way passing through appellee's lands. The right of way and track of appellant's railroad passes down the eastern side of the valley, adjacent to the bluffs on that side of the river, and having a part of its right of way also over lands of appellee. The C. & E. I. R. R. was constructed through this valley about 1899,—appellant's road, during 1909.

Where these lines of railroad cross Cache River, near the north side of Section 3, Township 13, Johnson County, their grades are approximately 314 feet apart. The C. & E. I. R. R. has a bridge across the river at this point, extending from the south bank of the river northeasterly to the north side of a slough. The opening through this bridge for the passage of water is 514 feet wide.

Appellant's track through this valley is located upon an embankment, some 12 or 15 feet in height, and after entering Section 3 at the north, the right of way intersects and crosses the channel of Cache River at four different points in a distance of less than half a mile. In constructing the embankment for its roadbed, appellant completely filled up the channel of the river at these points. To take care of the situation thus created, appellant constructed two new channels entirely on its right of way. Each channel connects with the natural channel of the river at the north, proceeds south along and entirely upon the right of way, until the natural channel is again reached, and the waters of the stream restored to the natural channel of the river, at points located upon the right of way of appellant.

The northerly one of these artificial channels is located upon a part of the right of way passing through or adjacent to lands of appellee in the northeast quarter of the northwest quarter of Section 3. The other artificial channel is upon the right of way passing through the southeast quarter of the northwest quarter of said section, and adjacent to lands belonging to one

Brown. Appellee owns the forty, or a part thereof, lying west of Brown's land. Appellant offered evidence tending to show that these artificial channels were of equal if not greater capacity than the natural channel of the river, and afforded equal or better facilities for the passage of water.

Slightly to the southeast of the point where appellant's right of way first reaches the river, near the north side of Section 3, a public road crosses said stream. Between the lines of railroad, said road runs almost directly east and west, and is but a very short distance south of the river bank. The point where this road formerly crossed the main channel of the river was east of appellant's line of right of way, and there was a steel bridge across the river at this point. The fills made by appellant in the river bed just north of the road, and the digging of the new channel, served to cut off that portion of the old channel lying east of the right of way at this point, and diverted the main channel of the river into the artificial channel constructed by appellant on the west side of its embankment. Appellant, then by arrangements made with the county commissioners, moved the steel wagon bridge from its location over the old channel east of the right of way and relocated it at a point west of its track, where the public road crosses the north end of the northerly one of the artificial channels made by it. It also appears from the evidence that as a part of this arrangement for the removal and relocation of this bridge, appellant was required to construct in the public road an embankment or grade some 4 feet in height, and approximately 15 feet in width, extending from the west end of this bridge, as relocated, to the C. & E. I. R. R. grade.

The lands involved in this suit lie south of this public road and between the lines of railroad, as above indicated.

It also appears from the evidence that appellant's

embankment constructed and maintained, without openings for the passage of water, has served to cut off from this valley some 15 acres of low lands, lying east of the embankment, which were formerly subject to overflow.

It appears quite clear from the evidence that appellee's lands were always subject to overflow in times of floods and freshets; that such overflows frequently occurred from one to three times in each year, and often during crop periods. It is not pretended that on account of the embankment and artificial channels constructed by appellant that appellee's land is more subject to overflow now than before the road was built. Nor do we find any evidence fairly indicating that the cutting off of the 15-acre tract of low land east of the right of way has to any appreciable extent increased the burden of flood waters naturally and formerly cast upon the premises of appellee. Neither do we find any evidence fairly tending to show that flood waters naturally coming upon appellee's premises are obstructed and held thereon, or that a longer period is now required for the escape of flood waters, and the land thereby rendered wet and swampy. In fact, as we understand the evidence and the theory of counsel for appellee, the chief grievance now seems to be that appellant, by reason of the changes made by it in this valley, adjacent to appellee's lands, has so accelerated the flow of flood waters and has so changed the current of such flood waters as to wash away the soil from appellee's lands to her damage. There is evidence tending to show some washes upon her lands which were not there before appellant's road was constructed, but whether these washes were caused as a direct and proximate result of the construction of appellant's embankment, and the artificial channels, or from the clearing up and cutting away of the timber and underbrush in the valley and along the banks of

the stream, thereby accelerating the flow of flood waters, or merely from the vagaries of the water itself, there is little to show outside of conjecture and speculation on the part of the witnesses.

The evidence discloses that one of the principal washes complained of was located just south of the public road, between the railroad grades, and just east of the right of way of the C. & E. I. R. R. Appellant contends that this wash was occasioned by the water breaking over the embankment in the public road at this point, and contends that it was not responsible for this embankment, or for any damages which may have been occasioned thereby. Appellant introduced evidence which tended to show that this wash was occasioned as claimed by it, and in this connection requested the court to give to the jury its refused instruction No. 3. This instruction advised the jury, in substance, that if they believed from the evidence that plaintiff's land had been washed and damaged by reason of water pouring over the levee built in the public highway, and that such levee was built by defendant under the direction and orders of the County Commissioners of Johnson county, that defendant would not be legally liable for any damages caused solely by such levee. This instruction was proper and should have been given, and we are of the opinion that its refusal constitutes reversible error.

This levee was no part of appellant's line of railroad, and was not located on its property. It was located on and became a part of the public highway, and was no doubt designed as and intended to be' an improvement to that part of the highway extending from the wagon bridge to the C. & E. I. R. R. grade. Its effect was to raise the grade of the beaten path of the road above the natural surface of the adjacent land, and thus secure for the public a better road through these bottom lands. The control of this road and its

repair and improvement was vested in the county commissioners (J. & A. St. vol. 5, p. 5164, ¶ 9810). The lawful character of this levee, or the lawful right of the commissioners to make and maintain it, would not be affected by the fact that its original construction or its future maintenance might or would occasion damages to an adjacent landowner. Nor would the fact that appellant constructed the levee in question, under arrangements made with the county commissioners, in connection with the removal and relocation of the wagon bridge, change the public character of this work. The acts done of appellant in this connection amounted to nothing more than a private donation of its services and material for what was undoubtedly regarded as a public benefit. The donation by appellant of its services for the purposes indicated was neither wrongful nor unlawful, and was not such as to render it liable in damages to one who may have sustained an injury occasioned either by the construction or from the maintenance of the levee. (*Culbertson & Blair Packing & Provision Co. v. City of Chicago,* 111 Ill. 651.)

We are of the opinion also that appellant's second and fifth refused instructions should have been given to the jury. Both of these instructions stated correct principles of law applicable to the facts in this case. The second refused instruction stated, in substance, that where one purchases land in a bottom where there is a river or creek, such land is purchased with the risk of overflow, and that a railroad company cannot be made to pay for such overflow and washing simply because such company may have made a new channel for such creek or river on its right of way, if such channel conveys the water into the old channel before it leaves the right of way of the company, and such new channel affords equal or better means for the escape of water than the old channel, and brings no more water over plaintiff's lands than would have flown thereon in a state of nature.

The fifth refused instruction stated, in substance, that a railroad company had a right to build its road through bottom lands, and the right also to change or divert the current of a creek or river on its right of way by making a new channel, and that no one under the law has a right to complain because of such changes, provided the new channel affords equal or better means for the escape of flood waters than the old channel, and provided also that it runs the water again into the old channel before it leaves the right of way; that if the jury find from the evidence that defendant changed and straightened the channel of Cache River on its own right of way and diverted the water into a new channel which afforded equal or better means for the escape of water than the old channel, and that the new channel conveyed the water into the old channel before it left the right of way, then plaintiff would have no cause of action against defendant, on account of such change in the channel of the river.

Counsel for appellee concede that these instructions state correct principles of law, but contend that they are not applicable to the facts in this case. Under the statute, appellant had a right to construct its roadbed along or across any stream which it might intersect or touch. It was required to restore the stream to its former state,—"*or to such state as not unnecessarily to have impaired its usefulness.*" It had no right under the statute to build its roadbed, without first constructing the necessary culverts or "*sluices* as the natural lay of the land requires for the drainage thereof." [J. & A. St. ch. 114, sec. 19, ¶ 8754 (5).] Under the statute, therefore, appellant was not required to restore the stream to its former state, but only to such state as not unnecessarily to impair its usefulness. In constructing its roadbed, it might either build culverts or bridges for streams or water courses or in lieu thereof might construct "*sluices.*" "*Sluices*" are de-

fined to be artificial channels for carrying water. Appellant, therefore, did not violate the statute in constructing its roadbed in the manner it did, if the "*sluices*" or artificial channels constructed by it did restore said stream to such state as not unnecessarily to have impaired its usefulness. Having elected to close this natural water course for its own convenience, it was its duty to make the new channels of sufficient capacity to carry the water then carried by the natural stream, and also all waters that may thereafter lawfully come to or be turned in to flow through such natural channel. (*Atchison, T. & S. F. Ry. Co. v. Jones,* 110 Ill. App. 626; *Kankakee & S. R. Co. v. Horan,* 131 Ill. 288.) This rule of law, however, would not cast upon appellant the duty of constructing an artificial channel of such capacity that it would carry within such channel, flood waters, which formerly, and in a state of nature could not be carried by the natural channel of the river, and which flood waters were accustomed to spread over the entire valley. The weight of authority in this State is to the effect that "A proprietor of land may change the course of a natural water course within the limits of his own land, if he restores it to the original channel before the lands of another are reached, provided in changing the course of the stream he does not cast upon the lands of an adjoining proprietor water which would not in a course of nature flow upon such adjoining premises." (*Daum v. Cooper,* 208 Ill. 391; *Fenton & Thompson R. Co. v. Adams,* 221 Ill. 201; *Wills v. Babb,* 222 Ill. 95; 28 Am. & Eng. Encyc. of Law, 1st Ed. p. 982.)

The propositions of law announced in the second and fifth refused instructions were not covered by any of the given instructions in the case. It was a matter material to appellant's defense that the jury be advised as to its right under the law to divert the water of Cache River by means of these artificial channels, and

to enable the jury to determine whether or not appellant was guilty of negligence in the construction and maintenance of its embankment adjacent to and through the bed of Cache River. The instructions referred to are in principle similar to the twelfth refused instruction, commented upon in the case of *Voudrie v. Southern Ry. Co.*, 155 Ill. App. 279.

For the errors indicated in refusing instructions, the judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*

MR. JUSTICE BOGGS took no part in the decision of this case.