## St. Louis, Vandalia and Terre Haute R. R. Co.

### v.

### Francis B. Haller.

1. TOWN ORDINANCE—*action will lie on providing for payment of damage by construction of railroad.* Where an ordinance of a town authorizing a railroad company to build its road on a street of the town, provides that the company shall be bound to pay all damages that may accrue to property owners on such street by reason of the construction of said railroad, an action will lie on the ordinance, against the company, in favor of any property owner whose property is injured by the construction of the road, either by depreciation in value or loss of business sustained during the building of the road and after its construction.

2. SAME—*rights of parties measured by, in a suit on.* In an action against a railroad company upon an ordinance of a town permitting it to lay its track on a street of the town, and providing for the payment of damages by the company to property owners, the parties will be governed and their rights measured by the ordinance, without reference to the constitutional provision in regard to compensation for property taken or damaged for corporate purposes, or to the common law on the subject, as announced in *Moses* v. *P., Ft. W. and C. R. R. Co.* 21 Ill. 516, and *Murphy* v. *Chicago,* 29 Ill. 279.

3. MEASURE OF DAMAGES—*to property by construction of a railroad.* In a suit under a town ordinance, providing for the payment of damages to property owners occasioned by constructing a railroad track, the difference in the value of the property caused by the construction of the road is the measure of damages, and this may be shown by a comparison of the sales of other property similarly situated before and after the construction of the road, or by the difference in its rental value, if held for the purpose of rent-

ing; but if not held for that purpose, then the difference in rental value would not be a criterion.

4. EVIDENCE—*as to damage done to property by construction of a railroad.* In a suit against a railroad upon an ordinance whereby it is bound to pay all damages to property owners caused by the construction of its road, where there have been no sales of property of a character similar to that claimed to be injured, either before or after the construction of the road, from which the depreciation in value can be ascertained, it is proper to resort to evidence of the noise and jarring of the earth, and smoke and dust caused by passing trains, rendering the house, if a dwelling, uncomfortable, and injuring the furniture and walls of the house, as an aid to the jury in estimating the depreciation in value of the property.

5. GRANTS—*all grants by the public must be construed liberally in its favor.* The grant in a charter to a railroad company to run its road through a town can not, by any reasonable or fair intendment, operate as a grant of the use of the streets, or either of them, to the company.

APPEAL from the Circuit Court of Fayette county; the Hon. H. M. VANDEVEER, Judge, presiding.

Mr. R. W. THOMPSON, Mr. J. P. VAN DORSTON, and Mr. T. J. GOLDEN, for the appellant.

Messrs. MOULTON & CHAFFEE, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This suit was brought under an ordinance adopted by the board of trustees of the town of Vandalia, authorizing appellant to locate and construct its road, on Main street, through the town. The ordinance was given in full in the case of *St. Louis, Vandalia and Terre Haute Railroad Co.* v. *Capps,* 67 Ill. 607. It contains, amongst others, this provision: "And, further, that the said railroad company are to be held bound to pay all damages that may accrue to the property owners on said Main street, by reason of the construction of said railroad."

In that case a construction was given to this provision of the ordinance. It was there held, that any person suffering damages by the construction of the road might recover for depreciation in the value of their adjacent property, the loss of business, and such like injury; that the language would not

14—82D ILL.

be restricted to the injury inflicted whilst the road was being constructed, but would extend beyond, for loss of business afterwards.

In that case it was held, the action would lie on the ordinance; that the parties were competent to make it, and that it was of binding force. The actions in both cases being on the ordinance, they, of course, are governed by it, without reference to the provision of the constitution of 1870, requiring compensation to be made for property taken or damaged for corporate purposes, or by the common law, as announced in the cases of *Moses* v. *P., Ft. W. and C. R. R. Co.* 21 Ill. 516, and *Murphy* v. *Chicago*, 29 Ill. 279. Had appellant constructed its road without agreeing to pay damages to the property holders, then the question would have been presented whether the constitution had modified the rule announced in these cases, and, if so, to what extent; but that question is not before us for consideration. This action being based on the ordinance, it must be governed by it, and, hence, the numerous authorities to which appellant refers, have no application to its decision.

It will be seen, by a reference to it, that *Capps'* case has settled the legal questions presented by this record, with, perhaps, one or two exceptions.

It is insisted that the noise, the smoke, and the jarring of the earth by passing trains, are not elements to be considered in assessing damages. They all, no doubt, contribute largely to incommode the use of the building and render it less desirable for a residence, and, hence, must depreciate the value of the property. No one would pay as much for it with those positive inconveniences, as they would without them. With smoke and dust entering the house and settling on the furniture, tarnishing the walls and rendering the atmosphere unpleasant to breathe, no one would pay the same price as if free from these annoyances. So of the jarring sensation, especially when so severe as to breach the walls, and with noise rendering it exceedingly disagreeable to persons in ill health, and disturbing, if not preventing, sleep. Such evidence was, therefore,

proper, as one of the aids to the jury in estimating the damage sustained.

The loss or depreciation in the value of the property, produced by the construction of the road, is the true measure of damages, and that was the question before the jury for solution. What the property would sell for before and after the road was constructed, would be one of the modes of ascertaining the damages, if the price was shown to have been reduced by reason of the building of the road. But it would not be the only means of determining the question. So would its rental value be another, where the property was held for rent; but the latter mode would not be a proper criterion where it was not held for that purpose. If there was no other property of the same value or description in the place, which had been sold, then other modes would have to be resorted to than the proof of the sale of such property before and after the damage was done.

It might, in such case, be shown by witnesses who were acquainted with the value of other property in the same vicinity, of the same character, by comparison, although not similar in structure or in value. The law could never tolerate a rule that damages could not be assessed unless sales could be proved of property precisely similar, in all respects. To adopt such a rule would be to deprive a party of all right to recover in such a case, unless he could show a sale of precisely the same kind in all respects, both before and after the damage was done. It has never been intended to hold that such is the only mode of ascertaining the damage, but, simply, is one of the modes, and, perhaps, the most satisfactory, when evidence of that character is available.

In this case, as the evidence showed no other property had been sold, before or after the road was constructed, similar in cost, construction or situation, it was proper to resort to the character of evidence that was heard in this case, as affording the jury the best means of ascertaining the extent of loss actually sustained. It may be, that the anticipated construction of the road may have inflated prices of property, and that,

failing to realize the expected advantages it would confer, all property in the place may have receded, as the evidence tends to show it did. But we presume the jury made all proper allowances therefor, or the verdict would have been much larger. The testimony shows the reduction in the value of the property was probably much greater than the amount of the verdict.

It is urged, that the fee to the streets was in the town, and that, it being a municipal corporation and under the control of the legislative power of the State, the General Assembly had power to grant the streets to the use of railway companies, for the construction and operation of their roads, and that the General Assembly, in passing the charter of this company, granted them the use of this street by authorizing them to pass through the town.

By no reasonable or fair intendment can it be held that the grant of authority to run their road through the town, operated as a grant of the use of the streets, or either of them, to the company for the purpose. There is no language from which a grant can be inferred. If such had been the intention, it would, undoubtedly, have been manifested by the use of language usually employed to express such an intention. The language of this charter was, no doubt, intended to be understood in its usual and popular sense. We should do violence to this language if we should hold that it created such a grant. The rule that all grants made by the public must be construed liberally in their favor, would preclude the construction contended for, even if it were doubtful whether the grant contended for was intended. But, as before stated, we perceive no such intention, or even a doubt whether it was so designed.

After a careful examination of the entire evidence in the case, we are satisfied that it sustains the verdict, and that there was no error in the instructions as they were given to the jury.

Perceiving no error in the record, the judgment of the court below is affirmed.                    *Judgment affirmed.*

Mr. Justice Scholfield took no part in the decision of this case.