THE CULBERTSON & BLAIR PACKING AND PROVISION COMPANY

*v.*

CITY OF CHICAGO *et al.*

*Filed at Ottawa November 17, 1884.*

.1.   EVIDENCE—*proof as to value of lot of ground—of the mode—in suit to recover for damage to the lot.*   In a suit to recover damages claimed to have resulted to a city lot from the erection of a viaduct in a street adjacent thereto, on the question of the value of the lot, it having no market value, the price at which similar property had been sold shortly before, in the same vicinity, may be shown by witnesses.

2.   SAME—*proof of value of lot by inspection of the jury.*   In assessing the damages a lot is claimed to have sustained in consequence of the construction of a viaduct in a street adjacent thereto, where the jury, by consent of parties, view the premises themselves, they may act upon the knowledge thus acquired by inspection.

3.   ACTIONS—*damage to adjacent property owners from public improvement in a street—liability therefor, upon whom it rests.*   The mere contributing of material aid by a private individual to a city, to enable the latter to

execute a public work not unlawful in itself, is not necessarily attended with liability on the part of him who extends such aid, for injury that may thereby result to private rights.

4. So where a railway company entered into a contract with a city, by which the former agreed to pay a given sum on the cost of a viaduct proposed to be constructed in a street, there being no illegal motive in tendering such aid to the city, it was *held*, that the railway company could not be held jointly liable with the city in tort for a private injury to adjoining property caused by the viaduct.

5. A city, alone, has authority to construct a viaduct in a street, and when one is so constructed by the city, even when done under the joint superintendence of a public official of the city and a chief engineer of a railroad company, and the company paid a part of the price of the improvement, it was *held*, that the viaduct was still public property, belonging to the city alone. The aid furnished by the railway, in such case may be treated as a mere private donation.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. Joseph E. Gary, Judge, presiding.

Messrs. Monroe & Tewkesbury, for the appellant:

The ordinance of the common council, set out in the opinion, does not bind the city to save the defendant railroad company from all damages that might result to the property of the plaintiff in consequence of the erection of the viaduct, and the court below erred in instructing the jury that it did. The instruction of the court as to this ordinance, if correct, was calculated to mislead the jury, and did, in fact, mislead them, and should not have been given. *Webber* v. *Brown*, 38 Ill. 87; *Reader* v. *Purdy*, 41 id. 279; *Nichols* v. *Mercer*, 44 id. 250; *Ten Eyck* v. *Harris*, 47 id. 268.

If an instruction is objectionable, and the natural effect would be to mislead the jury, when the facts are controverted, the verdict should be set aside. *Adams* v. *Smith*, 58 Ill. 417; *Carter* v. *Carter*, 62 id. 439; *Herrick* v. *Gary*, 65 id. 101; *Frantz* v. *Rose*, 89 id. 590.

Mr. F. S. WINSTON, and Mr. E. J. HARKNESS, for the appellees:

The entire effect of a structure,—not a portion,—should be considered, beneficial as well as injurious. *Page* v. *Railway Co.* 70 Ill. 324; *Shawneetown* v. *Mason,* 82 id. 337; *City of Elgin* v. *Eaton,* 83 id. 585; *Railroad Co.* v. *Hall,* 90 id. 42.

By consent of parties the jury went upon the premises and acted from their own observation. This action practically made their verdict an award.

The view of the premises is not the only competent evidence, but is sufficient to sustain the verdict even were no other evidence produced. *Railroad Co.* v. *Sawyer,* 71 Ill. 361; *Railroad Co.* v. *Barnum,* 107 id. 160; *Green* v. *Chicago,* 97 id. 370.

That evidence of actual sales of property in the locality, or similarly situated or of similar character, constitutes the very best evidence in cases of this character upon the question of value and of damage, has been repeatedly held by the courts. *Railroad Co.* v. *Haller,* 82 Ill. 208; *White* v. *Hermann,* 51 id. 243; *Railway Co.* v. *Maroney,* 95 id. 179; *Shattuck* v. *Railroad Co.* 6 Allen, 115; *Edmunds* v. *Boston,* 108 Mass. 535; *Railway Co.* v. *Railway Co.* 3 Allen, 142.

As is said by the court in *Railroad Co.* v. *Haller, supra,* the Pennsylvania company did not, by paying $14,000 towards the erection of this viaduct, thereby render itself liable for the consequential damages resulting therefrom. *Nevins* v. *City of Peoria,* 41 Ill. 502; *City of Quincy* v. *Jones,* 76 id. 231; *Murphy* v. *Chicago,* 29 id. 280; *City of Chicago* v. *Rumsey,* 87 id. 350.

The rule is well stated by Cooley, in his work on Torts, on page 140.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was an action on the case, by appellant, against appellees, for damages sustained to property in consequence of

the construction of a viaduct, in Eighteenth street, over the tracks of the Pittsburgh, Fort Wayne and Chicago Railway Company. Judgment was rendered in the trial court, in favor of appellant, against the city of Chicago alone, for $5000, and that judgment, having been affirmed on appeal to the Appellate Court for the First District, is brought before us, by the present appeal, for review.

The contest in the Appellate Court, whether the judgment is sustained by the evidence, having been determined against appellant, it, of course, remains only for us to inquire whether there is such error in the rulings occurring during the trial, in regard to the law, as will authorize a judgment of reversal.

It is contended the Superior Court erroneously allowed the witness Pierce to testify as to the price for which a certain lot or piece of property was sold, without testifying as to the value of that lot or of that here affected; and the witness Crawford to testify as to amounts paid by the Western Indiana Railroad Company for lots lying east of the Chicago river. It does not appear that this property had a regular market value, like a commercial article, and mere opinions of its value are shown, by the evidence preserved, to be as variant as the different tastes and fancies of the witnesses. From the very necessities of the case, actual sales of property in the vicinity, and near the time, are competent evidence, as far as they go. On cross-examination, all circumstances can be drawn out, showing that the given sale fails, and how much, of being a fair criterion of value. We think there was no error in the admission of this evidence. (*St. Louis, Vandalia and Terre Haute Railroad Co.* v. *Haller*, 82 Ill. 208; *White* v. *Hermann*, 51 id. 243; *Chicago and Western Indiana Railroad Co.* v. *Maroney*, 95 id. 179.) It is much less likely that such evidence can have produced harm in cases like the present, where, as was here done, the jurors themselves visit the property and form their opinions.

Appellant asked, and the court gave, this instruction, corroborative of that view:

"The court instructs the jury, that as the parties to this action, by mutual consent, allowed the jury to view the premises in question, and the viaduct, they have the right, in finding their verdict, to take into account such facts as they learned by viewing the property, as to whether the construction of the viaduct permanently depreciated or increased the market value of the property in question."

—And the language is sanctioned by *Mitchell* v. *Illinois and St. Louis Railroad and Coal Co.* 85 Ill. 566; *Green* v. *Chicago,* 97 id. 370; *Peoria, Atlanta and Decatur Railroad Co.* v. *Sawyer,* 71 id. 361; *Peoria and Farmington Railway Co.* v. *Barnum,* 107 id. 160.

Objection is also urged that the Superior Court erred in refusing to allow appellant to prove the size and width of property best adapted to warehouse and transportation purposes. We do not think any serious harm to appellant could have resulted from this ruling. The nature and character of the property, and its adaptation, had been previously sufficiently proved.

The most important question presented by the record is, whether the court erred in its instructions with regard to the connection of the Pennsylvania company with the case, and as to the liability of that company. On the trial, evidence was given of an ordinance of the city of Chicago, as follows:

"Whereas, on the 22d day of March, A. D. 1876, the city council of the city of Chicago did make an appropriation towards the erection of a viaduct over the tracks of the Pittsburgh, Fort Wayne and Chicago Railway Company at Eighteenth street, in the said city of Chicago; and whereas, the Pennsylvania company, (lessee of the Pittsburgh, Fort Wayne and Chicago railway,) through its general manager, has agreed, in writing, to pay, on account of said improve-

ment, an aggregate sum of fourteen thousand ($14,000) dollars: Therefore, be it ordained by the city council of the city of Chicago:—

"Section 1. That the department of public works is hereby directed to proceed to erect and complete; within one year from the passage of this ordinance, a good and sufficient viaduct, with stone abutments and iron frame-work, over the tracks of the Pittsburgh, Fort Wayne and Chicago Railway Company at Eighteenth street, in said city: *Provided,* the said railway company shall agree, by consenting to this ordinance through its authorized officer, to pay in monthly installments, upon the estimates of said department of public works and of the chief engineer of said railway company, to be issued as the work progresses, an aggregate sum of fourteen thousand ($14,000) dollars.

"Sec. 2. That said viaduct shall be built under the joint superintendence of said department of public works and chief engineer of said railway company, in accordance with the plans and specifications now on file in the office of said department of public works.

"Sec. 3. All expenses, of every nature and kind, in excess of said fourteen thousand ($14,000) dollars shall be borne by the said city of Chicago. Said city shall maintain the approaches to and floor of said viaduct at its own expense, and also do all ordinary repairs. The said city of Chicago shall save the said railway company harmless for any claim for damages by any person injured through the erection of said viaduct, and from all expenses connected with the erection of the same exceeding said sum of fourteen thousand ($14,000) dollars: *Provided, however,* the said chief engineer's services shall be rendered at the expense of said railroad company.

"Sec. 4. This ordinance shall be in force from and after the acceptance of the provisions hereof by said railway company, by its authorized officer or officers."

And also of a letter, in the words following:

"PENNSYLVANIA COMPANY,
OFFICE OF THE GENERAL MANAGER,
PITTSBURGH, PENN., *March 30, 1878.*

"*Sir*—On condition that the city of Chicago will, by ordinance, (copy of which is hereto attached,) provide for the erection of a viaduct over the tracks of the Pittsburgh, Fort Wayne and Chicago Railway Company, at Eighteenth street, according to plans and specifications now on file in the office of the department of public works in said city, this corporation will contribute, and obligate itself to pay, the sum of $14,000 towards the expense of the construction of said work, to be proportionately expended as the work progresses, on the estimates of the department of public works and of the chief engineer of this company.

"Respectfully,

J. D. LAYNG, *Gen. Manager.*"

Proof was also made that the Pennsylvania company paid to the city $14,000 on account of the construction of the viaduct, and that the plans for its construction were submitted to the engineer of the Pennsylvania company, and were satisfactory to him.

Appellant thereupon asked the court to instruct the jury as follows:

"The court instructs the jury, as a matter of law, that the ordinance offered in evidence contains no contract embracing the suit brought by the plaintiff, and the jury will disregard any contract claimed by the counsel for the city, that it alone is liable for the damages in this case to the plaintiff."

But the court refused to give the instruction, and, to the contrary, gave the following, at the instance of the city:

"The jury are instructed that they should not permit the fact that the Pennsylvania company is a co-defendant with the city in this case, in any way to prejudice their minds as

42—111 ILL.

against the city; and the jury are further instructed, that by the ordinance of April 15, 1878, introduced in evidence by the plaintiff, if it appears by the evidence that the railway company assented thereto, the city would be bound to save the railway company harmless against any damages which may be recovered by reason of the erection of the viaduct."

We do not conceive that it was a material inquiry whether the city was bound to save the railway company harmless against damages to be sustained in consequence of the construction of the viaduct. That could only be material in a suit brought by the railway company against the city for indemnity. It can hardly be necessary, and yet can do no harm, to call attention to the fact that the liability of the defendants, here, rests upon tort, and not upon contract. If both have been guilty of a tort, to the injury of the plaintiff, both are liable, no matter what contracts there may be between them as to indemnity.

We come, then, to the inquiry, does the fact that the Pennsylvania company pays $14,000 towards the expenses of constructing this viaduct, and stipulates that it shall be done under the joint superintendence of the department of public works and the chief engineer of the company, make the company liable for damages sustained by adjacent property holders.

The city alone has authority to construct a viaduct in the street, and we will not presume, in the absence of proof, that authority has been attempted to be surrendered to others. There is no such proof here. The evident purpose of requiring the work to be done under the joint superintendence of the department of public works and the chief engineer of the company, is, that the work may be done to the satisfaction of the company as well as of the city,—in short, to avoid prejudicing, unnecessarily, the rights and interests of the company. But the improvement is still the improvement of the city, the property is its property, and the supervision is

confided solely to it. It is undoubtedly true that a contract between a city and another party, to induce the city to exercise its public powers for the benefit of a private party, is contrary to public policy, and would not be enforced; but there are many cases where the public necessity for the making of a given improvement is beyond question,—where the power to make it exists, and the duty to make it is clear, beyond doubt, if, only, there be the financial ability. In such cases, if private parties voluntarily contribute to lighten the public burthen, it can not be said the character of the work has, in any degree, been changed. All there is accomplished by the private donation is, financial ability is given where before it was wanting. Nor can the fact that private parties are benefited by the improvements, be of material significance. It rarely happens in cases of public improvements that private parties are not benefited,—it is only important that the improvement is not in the interest of private parties instead of the public. Thus the court said in *Townsend* v. *Hoyt*, 20 Conn. 1: "We must not be considered as assenting to the proposition that a promise by individuals to pay a part of the expense of public improvements ordered by public authority, is, of course, illegal and void. We think the amount of a public burthen, or the cost of a public improvement, may properly enough enter into the question of expediency or necessity. A canal, a railroad, a bridge, a new street, a public square, or a sewer, is called for. If made in one way, or in one place, it will be much better for the public, though more expensive; but individuals especially benefited stand ready, by giving their land, their money or their labor, to meet the extra expense. Will these promises be void, as being without consideration or against public policy? We think not."

There being, then, nothing in the contract itself necessarily illegal, and there being no evidence *aliunde* the evidence of the contract to show an illegal motive or purpose in either

of the parties, how can the company be held liable as a *tort feasor* for merely contributing material aid to the execution of a work not unlawful in itself, and not necessarily attended with injury to private rights? The city might lawfully construct the viaduct, and although it should damage private property, it could not be enjoined from its construction, but the party injured would have his remedy in an action at law, after the completion of the work. (*Stetson* v. *Chicago and Evanston Railroad Co.* 75 Ill. 74.) Surely, it could not reasonably be intended because A agreed to give B $100 to aid him in prosecuting a work that he might lawfully prosecute, that he intended he should prosecute the work unlawfully. The city, here, might have adjusted the plaintiff's damages by a proceeding under the Eminent Domain act, before proceeding with the work, or it might respond in damages after the work was completed; but in either event it was responsible, and the work was lawful. Could it be pretended that every individual along the street who should contribute to this work is liable in tort for all the evil consequences flowing from the work, would it not follow, if the money were raised by special assessment a like liability would exist? If the mere contribution of material aid fixes responsibility, what principle excludes the one and includes the other?

In speaking of unintended wrongs, Cooley, in his work on Torts, on page 140, says: "Passing now to the class of unintended wrongs, we find them to consist most commonly in the neglect to perform some duty which the party has assumed by contract, or which the law has imposed because of official position or of some special relation. In such cases several persons may be found blamable, but it does not follow that all can be held liable to the party wronged. The rule is general in such cases that the legal wrong is chargeable only to the party who, by his contract, assumed the duty, or upon whom the law imposed it,—in other words, as the breach of duty constitutes the wrong, the person who, in legal

contemplation, is a wrongdoer, is the person who was burdened with the duty, and who has failed in its performance." The city, in the present case, is the party burdened with the duty, and who has failed in its performance. It, alone, could go upon the street and erect the viaduct. It, alone, could take and damage and condemn property for that purpose, or lawfully proceed with the work without being subject to injunction, being liable for the payment of all damages upon its completion. The position contended for by appellant would make every donor to the capital of a railroad company liable jointly with the company, or severally, every time the company should take or damage property in the construction of its road without having first obtained the right to do so by proceedings under the Eminent Domain act. That such a consequence is not to be regarded as the proximate consequence of the act, is, we think, too clear to admit of discussion.

The instruction given at the instance of appellees correctly says that the jury should not permit the fact that the Pennsylvania company is a co-defendant with the city in the case, to prejudice their minds against the city. The balance of the instruction should, in our opinion, have been refused as irrelevant, but it is impossible that giving it can have prejudiced appellant, because there is no other hypothesis, sustained by evidence, upon which the Pennsylvania company can be held liable,—and so, in effect, the court ruled in giving appellees' instruction.

We see no cause to disturb the judgment below, and it will therefore be affirmed.

*Judgment affirmed.*