Submitted on briefs March 7; reversed November 18, 1930.

## MOSS, *v.*
## PEOPLES CALIFORNIA HYDRO-ELECTRIC CORP.

(293 P. 606)

*O. C. Gibbs* and *T. S. McKinney,* both of Lakeview, for appellant.

*Arthur D. Hay* of Lakeview for respondent.

ROSSMAN, J. The evidence disclosed the following: The plaintiff owns three lots in the city of Lakeview which front on West street; standing thereon, immediately adjacent to the street line, are six large poplar trees twenty-five years old some of the branches of which extend partially into the street. In the latter part of 1927, when the defendant was about to install several electric power wires along West street it discovered that the branches and foliage of these trees would interfere with its wires. As a result of a conference between the company's manager and the plain-

tiff the latter consented that the defendant could trim the branches so as to clear its wires for a space of four feet. The following day a crew of men in the defendant's employ cut off all of the branches from the side of the trees adjacent to the street for a distance of twenty-five feet above the sidewalk level. The plaintiff contends that this trimming was unnecessarily extensive, that it exceeded the authority which she had conferred, and that it damaged the value of her real property.

Three of the four assignments of error charge that the court misapplied the rules governing the measurement of damages. In order to show that her property had been damaged, and the amount thereof, the plaintiff offered the following evidence: A real estate broker, who testified that he plied his vocation in Lakeview and that he was familiar with the real estate market in that city, stated that the market value of the plaintiff's property immediately before the trimming of the trees was $5,500. When asked the value of the property immediately after the trimming he replied: ''I wouldn't attempt to answer that question,'' and explained, ''there has not been enough property of that class change hands, property of that kind in Lakeview, there hasn't been enough sales to determine the difference in value with or without shade trees, there is no basis to answer that question.'' The plaintiff testified over the objections of the defendant that the value of her property to her immediately before the trimming of the trees was $5,000 and that after the trimming the value to her was $4,000. The evidence also shows that Lakeview is an incorporated city with a population of 2,000, that before the early settlers had located there the land was barren of trees, and that the trees which have been planted since render

the adjoining premises desirable. The plaintiff's trees are healthy, are approximately fifty feet tall, give an abundance of shade and required care when they were young.

The court instructed the jury:

"Ordinarily, where property has a market value that can be shown, such value is the criterion by which actual damages for its destruction or injury may be fixed. It is sometimes difficult or impossible, however, to fix a market value, and then it is necessary to resort to other methods of computation of damages. If you should find from the evidence in this case that plaintiff is entitled to damages, but that there was no difference capable of being shown between the market value of plaintiff's property immediately before and immediately after the damage to the trees thereon (if you find such damage to have been committed), then I instruct you that you may take into consideration, in arriving at your verdict, the value to the plaintiff of the property damaged or injured, if any at the time and place of the injury, if any."

■ The briefs are in accord that the plaintiff granted to the defendant authority to trim the tree branches so as to yield a four-foot clearance for the wires. The defendant does not claim that a greater clearance was necessary and the plaintiff concedes that four feet were essential. Before beginning this work the defendant obtained a franchise from the city council of Lakeview which authorized it to string these wires in the street upon which the plaintiff's property faced and to erect the necessary poles at places to be selected by the city's engineer. The work was done in compliance with the franchise and the instructions of the latter official. As above stated the parties are agreed that the plaintiff granted to the defendant the right to trim the trees sufficiently to afford a four-foot clearance for its wires, and that such a clearance was

ample; but even if no express authority had been obtained the authorities hold that an electrical company which has strung wires pursuant to a legal franchise may trim overhanging branches which interfere with its wires if such removal is reasonably necessary to assure safety and the enjoyment of the privileges conferred by the franchise: Elliott on Roads & Streets, (2d Ed.) § 806; and 20 C. J., p. 310, § 11.

■ Since the defendant had the right to trim the trees sufficiently to provide a clearance for its wires it is evident that if it did not cut any more foliage than was necessary to produce that result it was not liable to the plaintiff, even though the value of her property was adversely affected by the trimming. But if the defendant exceeded the authority conferred by cutting off more branches than was necessary and thereby injured the value of the property the defendant is liable for the resulting damages. Since the trees are valuable only on account of their ornamental and shade-providing qualities, neither party contends that recovery is limited to the value of the timber in the trees and both agree that the injury to the freehold measures the recovery. The rule applied in such instances, in the absence of circumstances which render it inapplicable, is that the property owner is entitled to receive an amount of damages equal to the loss or depreciation in the value of the property caused by the wrongful mutilation of the trees; this amount is measured by determining the difference in the value of the land immediately before and immediately after the consummation of the wrongful act: *O. & C. R. R. Co. v. Jackson*, 21 Or. 360 (28 P. 74); *Meyer v. Tel. Co.*, 122 Iowa 514 (98 N. W. 300); *Disbrow v. Westchester Hardwood Co.*, 164 N. Y. 415 (58

N. E. 519); Sutherland on Damages (4th Ed.) § 1019, and 17 C. J., Damages, § 191, p. 891. When the market is active and the property appeals to prospective buyers the market price is readily ascertainable. In such instances market price reveals real value and real value is the true basis of compensation: Sedgwick on Damages (9th Ed.) § 243. The law of damages regards market value as the best evidence of real value. Ordinarily when an owner receives the market price of the destroyed property he is able to restore himself readily to as good a position as if the tort had not been committed. However, a property may be so peculiarly located (see for instance *St. L., V. & T. H. R. R. Co. v. Haller*, 82 Ill. 208) or of such a peculiar type (*Jonas v. Noel*, 98 Tenn. 440, 39 S. W. 724, 36 L. R. A. 862), that the market has not become interested in it and, therefore, has not placed any value upon it. The general rule previously stated by us presupposes a market for the property. If there is in fact none, resort to market value cannot be had and the value of the property must be ascertained from other evidence. The evidence admissible under such circumstances varies with the nature of the property and its surrounding circumstances.

We find it difficult to believe that in the city of Lakeview a residential lot improved with a dwelling house possesses no established market value. However, we notice that the judge of the circuit court, who presided over the trial and who resides in Lakeview, permitted the plaintiff to resort to secondary evidence of value upon the assumption that the property possessed no market value. Before the secondary evidence was received neither the circuit court judge nor counsel for the defendant interrogated the two witnesses who testified to value. In fact, the slight evi-

dence of absence of market value which the plaintiff offered was not challenged by the defendant either by cross-examination or by contradictory evidence. Apparently the circuit court judge understood the real estate broker's reply to the inquiry concerning the value of the property after the defendant had trimmed the trees, to mean that sales of property of the kind owned by the plaintiff had been so few that he was unable to state its value and preferred to withdraw the estimate which he had already made. The defendant's brief argues that where evidence of market value is absent a plaintiff can recover only nominal damages, and does not contend that evidence of market value was available; this argument leads us to infer that possibly the defendant acquiesces in the contention that this property possessed no established market value. By reason of the foregoing we shall assume, although we do so reluctantly, that evidence of market value was unavailable. Before proceeding we shall state that it certainly would not have been necessary for the plaintiff, in her efforts to establish value after the trimming, to have found a broker who was familiar with a sale of a similar property containing six trees whose branches had been trimmed upon one side only.

Many instances can be found in the books where, due to peculiar circumstances, a real estate property was shown to have possessed no market value. The following are three instances of this kind and in each of them the court found it possible to determine the real value of the property: *St. L. V. & T. H. R. R. Co. v. Haller,* supra; *Jonas v. Noel,* supra; *Hollinger v. Ry. Co.,* 94 Kan. 316 (146 P. 1034, Ann. Cas. 1916D, 802) ; *San Antonio U. & G. Ry. Co. v. Ernst,* 210 S. W. 603. In all instances whether the property possesses an established market value or not, the ultimate object of

the search is its real value: Sedgwick on Damages (9th Ed.), § 243. Real value is thus defined by Sedgwick § 243:

"By value, however, we do not mean any ideal value, based on the intrinsic though unknown excellence of the thing for purposes of use. The value of a thing at any particular time, so far as it is important in determining the amount of compensation, is based upon such of its qualities as are generally known or knowable, and therefore enter into the estimation in which it is held by people generally: 'the opinion of the public of possible buyers.'"

The plaintiff, however, seems to believe that where the market value cannot be shown the property owner is entitled to receive the personal value of her property, that is the value which the property represents to herself. In support of this contention she relies upon the decisions in *Swank v. Elmert,* 55 Or. 487 (105 P. 901), and *Sutherland Express Co. v. Owens,* 146 Ala. 412 (41 So. 752, 8 L. R. A. (N. S.) 369, 119 Am. St. Rep. 41 9 Ann. Cas. 1143). Both cases, especially the former, contain general expressions which lend support to her contention. In the Southern Express Company case the article with whose value the action was concerned was an historical manuscript prepared by the plaintiff. In the Swank case the articles were the furnishings of a rooming house conducted by the plaintiff. In the Southern Express Company case the court, after reviewing the evidence which showed that the manuscript had no market value and that it had not been prepared for the purposes of sale, held that its value "must be ascertained in some other rational way and from such elements as are attainable. * * * Where the article lost has no market value, the rule of damages seems then to be its value to the plaintiff; and in ascertaining

this value inquiry may be made into the constituent elements of the cost to the plaintiff in producing it.'' In the Swank case the plaintiff made no effort to prove personal value; he sought to show ''the value of the furniture for rooming house purposes, and * * * its value while located in the rooming house at the time of its alleged conversion.'' An owner is always entitled to have his property's value estimated with reference to the most profitable use for which it is adapted: Sedgwick on Damages (9th Ed.), § 252. Thus the plaintiff in that case was entitled to prove the value of her furniture for the special use of rooming house furnishings. The value thus established was not a personal one but a commercial one recognized by the market. The portion of the decision in regard to the rule of damages in the absence of a market value was unnecessary, and if it indicates that an owner of a common commodity freely bought and sold in the market can recover a personal value it must be considered overruled. The rule of personal value referred to in the Southern Express Company case was peculiarly applicable to the article which was the subject-matter of that action; see also *Patterson v. Babcock & Peets,* 128 Or. 476 (274 P. 903). The citation in the Swank case to § 117, Sutherland on Damages (3d Ed.), which should be § 1117, does not assist in our present case. We have read the cases cited by Sutherland and find that in most of the instances the article converted was ''an embroidered silk quilt, family pictures,'' a ''portrait of the plaintiff's father,'' and ''pictures and unpublished manuscripts.'' It is evident that in such instances the article has a peculiar value to the owner, and that he cannot supply himself in the market with goods in the same condition and so exactly suited to his purpose as were those of which he has been

deprived. In another of the cases cited by Sutherland the article converted was a printing plate belonging to the plaintiff and specially prepared for printing his labels.

Here again the observations just made are applicable. There is no contention that the plaintiff's property was peculiarly adapted to her needs, or that its value to her was distinguishable from the value which the community placed upon it. If we may assume that the market had not assigned to her property any value the fact that its real value could nevertheless be ascertained from other evidence is well illustrated by the decision in *J. T. & K. W. Ry. Co. v. P. L. T. & M. Co.*, 27 Fla. 1 (9 So. 661, 17 L. R. A. 33):

"In actions of this kind where the value of the properties destroyed is the criterion of the amount to be awarded, and the property destroyed has no market value at the place of its destruction, then all such pertinent facts and circumstances are admissible in evidence that tend to establish its real and ordinary value at the time of its destruction; such facts as will furnish the jury, who alone determine the amount, with such pertinent data as will enable them reasonably and intelligently to arrive at a fair valuation; and to this end the original market cost of the property; the manner in which it has been used; its general condition and quality; the percentage of its depreciation since its purchase or erection, from use, damage, age, decay, or otherwise, are all elements of proof proper to be submitted to the jury to aid them in ascertaining its value."

The Kansas court in *Hollinger v. Railway Co.*, supra, quoted from *K. C. & S. W. Rd. Co. v. Ehret*, 41 Kan. 22 (20 P. 538), as follows:

"It is claimed that only such witnesses as know the market value of the land in question should be permitted to give opinions concerning its value, and

that such opinions should be confined exclusively to market value. Now this claim is certainly untenable. It is not the market value merely that is in question, nor the usable or productive value, but it is the real value. And this real value involves everything that tends to make the land more valuable or less valuable.''

From Wigmore on Evidence (2d Ed.), § 717, we quote:

''But not always is there a market value for an article. In such a case the value is the probable exchangeable rate so far as one can estimate it from the various attendant circumstances and conditions which would affect the disposal of the article, and it is with these that a witness must in such a case be familiar.''

We are satisfied that when the evidence shows that a property, like the plaintiff's, does not command a market price, the law of damages, which awards to an owner an amount representing the real value of his property, is not discarded and a new one of personal value created, but the measure of real value is retained and the court turns to other evidence to determine its amount.

■■ The foregoing being the principles of law that govern the measurement of damages it seems quite evident that the circuit court did not apply rules in harmony with them. It ought to be readily possible for the plaintiff to develop sufficient facts which will disclose the real value of her property both before and after the alleged wrongful act without resorting to personal value. If the property possesses a market value that fact should be shown and her damages should be measured by the difference between the market value of her property before and after the alleged wrongful act. Since the plaintiff has for many years resided upon this property and is intimately

familiar both with it and with the city of Lakeview she is qualified to express an opinion on the market value of her property: Wigmore on Ev. (2d Ed), § 714; 22 C. J., Evidence, § 685, p. 586; *Shattuck v. Stoneham Branch Ry Co.*, 6 Allen (Mass.) 115. It is apparent that evidence of real value is available whether market value is resorted to or its alternative rule is employed. In the reception of evidence and in the instructions to the jury we therefore find error. Possibly the error is slight and did not prejudicially affect the defendant's interest; it may be that the court employed the wrong words but had the correct theory in mind, and that the jury was not misled. Nevertheless, the plaintiff sought and obtained treble damages. Under such circumstances it is additionally essential that the correct rule of damages should be employed.

 The court permitted one of the plaintiff's witnesses to describe the manner in which the defendant had trimmed the trees in front of a lot adjoining the plaintiff's premises. We quote from the record thus:

"Q. How about the John Hanan property?

"A. Yes, they trimmed that.

"By Mr. Gibbs (counsel for defendant): That is immaterial; only those on the Moss property are the ones that are material.

"By the Court: Objection overruled.

"A. They cut in the center of the tree and there is a big limb sticking fifteen feet in the air * * *."

Several photographs which were received in evidence, showing the condition of the plaintiff's trees after the trimming, also show the above-mentioned Hanan tree. It sands out prominently in the pictures with the upper part of its trunk entirely removed and the large limb, above described, "sticking fifteen feet in the air." Had it not been for the above answer the

jurors would not have been informed that the plaintiff believed that the defendant was responsible for the mutilation of the Hanan tree. In an action of this character, where treble damages lend to the proceeding a punitive character, the above evidence was clearly prejudicial to the defendant's case. The plaintiff does not endeavor to show that this testimony was material to any issue in the case, and since the defendant freely admitted that it trimmed the plaintiff's trees we have been unable to discover any legitimate purpose served by this evidence. The court should have excluded it: Chamberlayne on Evidence, § 3208-9; 10 R. C. L., Evidence, p. 937, § 104; *Hudson v. Chicago & N. W. Ry. Co.,* 59 Iowa 581 (13 N. W. 735, 44 Am. Rep. 692), and *Veit v. Class* and *Nachod Brewing Co.,* 216 Pa. 29 (64 Atl. 871, 116 Am. St. Rep. 757). The plaintiff contends, however, that the defendant's objection was tardy and insufficient. It is true that the witness had already answered that the defendant trimmed the Hanan trees before the objection was voiced, but that statement was not prejudicial. Apparently the defendant freely conceded that it trimmed Hanan's trees as well as the defendant's so as to provide clearance for the wires. The prejudicial mater was not elicited until it appeared, over objection, that Hanan's trees were left in a mutilated form. We conclude that the objection should have been sustained.

■ We also believe that the court erred in the procedure it adopted preliminary to the trebling of damages. Although it multiplied the damages by three, under a statute which authorized such action only if the trespass was wilful and committed without lawful authority, it did not obtain from the jury any finding that the defendant's conduct was of the type described in the legislative act: § 5-306, Oregon Code 1930. The

succeeding section of our laws directs the entry of double damages if it "appear that the trespass was casual or involuntary." The court instructed the jury that it should determine the amount of the actual damages and that the court would multiply them in harmony with the law. Since the court did not obtain a special finding determining the culpability of the defendant's act its judgment for treble damages was unauthorized.

It follows that the judgment of the circuit court will be reversed. The cause will be remanded with instructions to proceed in harmony with the above.