Argued and submitted January 8, affirmed December 29, 2016

Neal COHEN,
trustee of the Cohen Irrevocable Trust,
*Plaintiff-Respondent,*

*v.*

AWBREY GLEN
HOMEOWNERS ASSOCIATION, INC.,
an Oregon mutual benefit corporation,
*Defendant-Appellant.*

Deschutes County Circuit Court
11CV0404ST; A157521

388 P3d 1160

R. Daniel Lindahl argued the cause for appellant. With him on the briefs were Stephen F. Deatherage and Bullivant Houser Bailey PC.

Steven K. Chappell argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## LAGESEN, J.

This case arises under Oregon's timber trespass statute, ORS 105.810.[1] Plaintiff lives in the Awbrey Glen residential development (the development) in Bend. Defendant, the Awbrey Glen Homeowners Association, Inc., (the HOA), is the homeowners association for that development. In plaintiff's timber trespass action, a jury found that the HOA, without lawful authority, cut down eight of plaintiff's trees. The jury awarded plaintiff $14,720 in damages for the eight trees. The trial court trebled the award to $44,160 as required by ORS 105.810(1), and entered a general judgment in favor of plaintiff. The court subsequently entered a supplemental judgment awarding plaintiff his attorney fees.[2] On appeal from both judgments, the HOA contends that the evidence is insufficient to support the jury's finding that the HOA—rather than the Awbrey Glen Golf Club—was responsible for cutting plaintiff's trees. The HOA further contends that, regardless of who cut the trees, plaintiff's expert used a legally impermissible method to value plaintiff's trees and that, as a result, no legally competent evidence supports the jury's award of damages. We disagree and affirm.

The evidence at trial was conflicting and many of the facts were sharply disputed. However, because the jury returned a verdict for plaintiff, we are required on appeal to "view the evidence * * * in the light most favorable to plaintiff." *Parrott v. Carr Chevrolet, Inc.*, 331 Or 537, 542, 17 P3d 473 (2001). We state the facts accordingly.

---

[1] ORS 105.810(1) provides:

"Except [under specified exceptions not applicable here], whenever any person, without lawful authority, willfully injures or severs from the land of another any produce thereof or cuts down, girdles or otherwise injures or carries off any tree, timber or shrub on the land of another person * * * in an action by such person * * * against the person committing such trespasses if judgment is given for the plaintiff, it shall be given for treble the amount of damages claimed, or assessed for the trespass. In any such action, upon plaintiff's proof of ownership of the premises and the commission by the defendant of any of the acts mentioned in this section, it is prima facie evidence that the acts were committed by the defendant willfully, intentionally and without plaintiff's consent."

[2] Plaintiff represented himself at trial, but had been represented by an attorney before trial, and incurred fees as a result of that representation. ORS 105.810(2) provides: "A court may, in its discretion, award to a prevailing party under subsection (1) of this section reimbursement of reasonable costs of litigation including but not limited to investigation costs and attorney fees."

The development is built around the Awbrey Glen Golf Course, which is run by the Awbrey Glen Golf Club. Plaintiff's home is along the twelfth fairway, and the golf club has an easement across his property "for golf purposes."

The development and golf course are located in an area at risk for wildfires. To help reduce that risk, Deschutes County awarded a grant to the HOA to conduct fire risk reduction efforts. The HOA administered that grant, and was authorized to use grant funds to pay for fire reduction efforts taken by the golf club, as well those efforts taken by the HOA itself. The HOA had a fire prevention committee that coordinated the HOA's fire prevention efforts. That committee worked with the golf club on its fire prevention efforts.

In the course of those fire reduction efforts, the HOA determined that some of plaintiff's trees should be cut down. Those trees were located in the golf club's easement across plaintiff's property. Because so many trees needed to be removed, the HOA marked the trees that were to remain.[3] However, the contractor hired to perform the tree removal cut down the marked trees, not the unmarked trees. As a result, eight of plaintiff's biggest trees were cut down: one nine-inch diameter ponderosa pine; two 12-inch diameter ponderosa pines; one nine-inch diameter western juniper; and four 12-inch diameter western junipers. In plaintiff's view, those eight trees were the best trees on his property.

Plaintiff then brought this action for timber trespass under ORS 105.810. The HOA's main theory of defense was that the golf club, not the HOA, had directed the cutting of plaintiff's trees, meaning that the HOA had not committed a timber trespass. Alternatively, the HOA contended that, even if it was implicated in the tree cutting, it had not

---

[3] Whether the markings signified the healthy trees that were to remain or, instead, signified the hazardous trees to be removed was the subject of conflicting testimony at trial. The Deschutes County worker assisting the HOA with its fire risk reduction efforts inspected the tree markings and testified that the trees that were to remain were marked. The HOA's representatives, in contrast, testified that the trees that were to be removed had been marked. It was undisputed that the marked trees were the ones that were felled. As we explain later, the jury's damages award suggests that it credited the testimony of the county worker, and we state the facts in accordance with that inference.

committed timber trespass because the golf club also had approved the cutting of plaintiff's trees and had the authority to do so under the terms of its easement.

Before plaintiff called his expert witnesses to testify to the value of the trees, the HOA moved to preclude plaintiff from presenting evidence of the replacement cost of the trees. The HOA argued that, under Oregon law, the only permissible measures of damages in a timber trespass case are (1) the diminution in value of the real property from which the trees were taken; or (2) the stumpage value of the timber taken.

In response, plaintiff acknowledged that one of his witnesses was going to testify to the replacement cost of the trees, but stated that his other witness was "coming in to say what the trees were worth." As to evidence of his property's diminution in value as a result of the tree removal, plaintiff explained that he had looked for a "real estate agent or somebody" who could testify to how the removal of the trees affected the value of his property, but that he could not find anyone who would do that because "[t]hey couldn't make a number." The trial court ruled that plaintiff could not present evidence of the replacement cost of the trees, but rejected defendant's argument that the sole measure of damages was the diminution in value of plaintiff's real property. After reviewing the Oregon case law on timber trespass damages, the court concluded that plaintiff could recover "[d]iminution of value or the trees themselves that were removed from the property, what were those trees worth."

Thereafter, plaintiff dismissed his expert who had been prepared to testify to the replacement cost of the trees and called his other expert, professional certified arborist Ian Smith. In Smith's opinion, plaintiff's eight trees had a total value of $14,720. Smith computed that value using the "trunk formula method," which, Smith explained, is

"a nationally recognized method through the Guide for Plant Appraisal. It's the Council of Trees and Landscape Appraisals. It's recognized in courts of law, through the IRS, and nationally through Realtors, to provide plant appraisal.

"Typically when we do a plant appraisal where the trees are not there anymore, * * * the trunk formula method is the

standardized guideline, because the formula used to come up with your plant values can be done appropriately without actually seeing the trees, since there's no—you know, we haven't seen them before they were cut, and there's no picture evidence of the trees beforehand."

Smith further explained that, under the trunk formula method, the value of a tree is computed by taking into account a number of factors about the tree: the species, its trunk circumference, its location and particular surroundings (including whether the tree is a single tree or part of a stand), and its health. The formula uses the cost of a nursery stock tree of the same species installed as a starting point for valuing a particular tree, and then adjusts that number based on the various factors to come up with a value for the tree. Smith testified as an example that, to appraise the 9-inch ponderosa pine, he first determined that the installed cost of a ponderosa pine from a local nursery would be $4,200. That value, "multiplied down by your species rating, condition, and location ratings" yielded a value for plaintiff's 9-inch ponderosa pine of $1,615. Smith testified further that he used the same method to appraise the other seven trees, ultimately determining that the total value of the eight trees was $14,720. Smith admitted on cross-examination that if the trees had been hazards, under the Plant Appraisal Guide, they would have had "no monetary value." However, he questioned whether the trees that had been removed had been hazards.

Pertinent to the issues presented on appeal, at the close of the evidence, the HOA moved for a directed verdict. The HOA argued, among other things, that plaintiff failed to present sufficient evidence to permit the jury to find that the HOA, rather than the golf club, was responsible for cutting plaintiff's trees, and that the HOA was entitled to a directed verdict for that reason. Alternatively, the HOA argued that Smith's valuation of the tree was an impermissible "replacement cost" valuation, and that it was entitled to a directed verdict on the ground that plaintiff had presented no legally competent evidence of damages.

The trial court denied the motion, and the jury returned a verdict for plaintiff. The special verdict form

reflects that the jury found that the golf club's easement did not authorize it to perform fuel reduction work on plaintiff's property and that removal of plaintiff's trees was not done by the golf club under its easement. The jury found further that the HOA intentionally trespassed on plaintiff's property, that plaintiff had not consented to the removal of his trees, and that the HOA's belief that it was authorized to remove the trees was not in good faith. Finally, the jury determined that the value of the removed trees was $14,720. As noted, the trial court trebled that amount as required by ORS 105.810(1), entered a general judgment in favor of plaintiff in the amount of $44,160, and then entered a supplemental judgment awarding plaintiff his attorney fees. The HOA appealed those judgments.

On appeal, the HOA assigns error to the denial of its motion for a directed verdict, contending, as it did below, that the denial was erroneous in two respects: (1) that the evidence was insufficient to permit the jury to find that the HOA, and not the golf club, directed the removal of plaintiff's trees; and (2) that the evidence was insufficient to support the jury's award of damages because plaintiff's expert, who supplied the only evidence of damages, used a legally impermissible method to value plaintiff's trees. In response, plaintiff argues that the record contains adequate evidence to support the jury's finding that the HOA, not the golf club, cut the trees. As to damages, plaintiff contends that the Supreme Court has held that different valuation methods can be used to assess damages in a timber trespass case and that, under the circumstances of this case, plaintiff's expert valued the trees in a legally permissible manner.

We review the trial court's denial of the HOA's motion for a directed verdict for legal error. *Miller v. Columbia County*, 282 Or App 348, 349, 385 P3d 1214 (2016). Our task is to determine whether the evidence, when viewed in the light most favorable to plaintiff, was sufficient to permit the jury to find in plaintiff's favor on the elements of plaintiff's claim put at issue by the motion. *Id.* "Our review is circumscribed by the case actually presented to the jury through pleadings, evidence, and jury instructions." *Hammer v. Fred Meyer Stores, Inc.*, 242 Or App 185, 187, 255 P3d 598, *rev den*, 350 Or 716 (2011) (internal quotations omitted). We

must affirm unless there is no evidence to support the jury's verdict. *Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 333 Or 304, 310, 39 P3d 846 (2002). We address each of the HOA's assignments of error in turn.

As to the first assignment of error, the record amply supports the jury's finding that the HOA was responsible for the removal of plaintiff's trees. There is evidence that the HOA was the sole recipient of the fire reduction grant from the county, that the HOA coordinated the tree removal along the 12th fairway, including on plaintiff's property, and that the HOA, not the golf club, paid the contractor who cut down the trees with the grant funds. In addition, there is evidence that the HOA, not the golf club, communicated with plaintiff about the tree removal, including evidence that a representative of the HOA called plaintiff about the tree removal, and evidence of written communications to plaintiff from the HOA's representatives about the tree removal, including a letter from the HOA president explaining that the tree removal was allowed by the HOA's Covenants, Conditions and Restrictions, and plaintiff's plot map, and that the HOA had provided plaintiff "with a courtesy notification, which is not required." That evidence was sufficient to permit a rational juror to find that the HOA, and not the golf club, directed the tree removal. The HOA's first assignment of error fails for that reason.

The HOA's second assignment of error challenges the trial court's denial of its motion for a directed verdict on the ground that plaintiff did not introduce acceptable evidence of damages. The HOA argues that the trial court committed three errors in denying the motion. First, it asserts that the trial court erred in concluding that plaintiff could prove damages using a measurement other than the diminution in value of plaintiff's real property and that, as a result, plaintiff's expert's valuation, which undisputedly does not measure the diminution in value of plaintiff's real property, is not competent to support the jury's award of damages. Second, it argues that, even if plaintiff was permitted to prove damages through a measurement other than the diminution in value of his real property, plaintiff was not permitted to use replacement cost as a measurement. In defendant's view, plaintiff's "trunk formula" method valuation

measured replacement cost and, consequently, cannot support the jury's finding of damages. Third, the HOA argues that the trees removed were hazardous trees and that, as a result, the testimony of plaintiff's expert that hazardous trees have no monetary value compels the conclusion that plaintiff's trees had no monetary value.

As to the first argument, the HOA is correct that, under Oregon law, the diminution in the market value of the plaintiff's real property is the ordinary measure of damages in a timber trespass case involving ornamental trees: "If the property possesses a market value, that fact should be shown, and [the plaintiff's] damages should be measured by the difference between the market value of [the] property before and after the alleged wrongful act." *Moss v. People's California Hydro-Elec. Corp.*, 134 Or 227, 237, 293 P 606 (1930); *Brown v. Johnston*, 258 Or 284, 293, 482 P2d 712 (1971) (utilizing diminution in value measure where neighbor poisoned a single shade tree). However, if evidence of market value is not available, damages resulting from the destruction of trees may be proved through other evidence demonstrating the "real value" of the loss to the freehold caused by the harm to the trees. *Moss*, 134 Or at 237.

*Moss*, like this case, involved damage to ornamental trees. *Id.* at 231. The plaintiff's real estate expert testified that he had no basis on which to estimate the effect of the damage to the trees on the market value of plaintiff's real property, explaining that there had not been sufficient real estate transactions in the community "to determine the difference in value with or without shade trees." *Id.* at 229. The plaintiff then testified that, as a result of the damage to the trees, the property had diminished in value by $1,000 to her personally, and the trial court instructed the jury that it could award damages to plaintiff based upon the value of the property to her personally, if the jury found that the diminution in the market value of the property was not "capable of being shown." *Id.* at 230. The jury found for the plaintiff.

On appeal, the Supreme Court reversed. It held that the trial court erred by instructing the jury that it could award damages based on the value of the trees to the

plaintiff personally. *Id.* at 234-36. First, though, the court concluded that the plaintiff was not limited to proving damages based on the diminution in market value of her property where that evidence was not available. *Id.* at 232, 237-38. Nevertheless, the plaintiff still had to prove the "real value" of the loss to her property, and could not prove damages through a personal valuation:

> "[W]hen the evidence shows that a property, like plaintiff's, does not command a market price, the law of damages, which awards to an owner an amount representing the real value of his property, is not discarded and a new one of personal value created, but the measure of real value is retained and the court turns to other evidence to determine its amount."

*Id.* at 237. That is, under *Moss*, when evidence of the effect of a timber trespass on the market value of real property is not available, "the value of the property must be ascertained through other evidence" that provides an objective—rather than a subjective—indicator of the "real value" of the loss to the property caused by destruction of the trees. *Id.* at 232-33. Having so concluded, the court remanded for a new trial at which the plaintiff would be required to prove either the diminution in the market value of her real property, or otherwise demonstrate the "real value" of the loss to her property, without relying on a personal valuation. *Id.* at 237-38.

In this case, it appears that plaintiff was in the same position as the plaintiff in *Moss*. Plaintiff represented to the trial court the he could not find a real estate expert who could "make a number" reflecting how the removal of the trees affected the market value of his property. The HOA did not contest that representation, and nothing in the record calls it into question. As we understand *Moss*, that circumstance permits proof of damages through other objective evidence of the "real value" of the loss to plaintiff's property caused by the tree removal.

Here, the testimony from plaintiff's expert Smith is the type of objective evidence of "real value" contemplated by *Moss*. Smith's testimony supplied an objective valuation of the trees based on a formula that took into account the particular characteristics and surroundings of those trees,

and did not rely on the sort of personal valuation rejected in *Moss*. And Smith's testimony, if credited, would permit a reasonable factfinder to find that plaintiff had suffered a loss in the amount $14,720; as a result of the tree removal, plaintiff's property, which previously had eight trees valued at $14,720, no longer had those trees. The trial court correctly rejected defendant's argument that plaintiff's failure to present evidence of the diminution in market value of his property entitled it to a directed verdict.

Turning to the HOA's second argument, we assume without deciding that the HOA is correct that the replacement cost of the damaged or destroyed trees is, under no circumstances, a permissible measure of damages in a timber trespass case.[4] Even so, the trial court determined that the trunk formula method, as applied by Smith, was not a valuation of the replacement cost of the trees. We agree with that determination. Although the HOA correctly points out that Smith used the installed cost of a tree from a local nursery as the starting point for determining the value of each of plaintiff's trees, Smith's explanation of his valuation process indicates that he was not computing the replacement cost of the trees, but rather placing a monetary value on the particular trees that had been removed from plaintiff's property. In particular, Smith's description of his process for valuing the 9-inch ponderosa pine indicates that he was not valuing replacement cost because his ultimate valuation of that tree ($1,615) was substantially lower than the cost of purchasing a replacement ponderosa pine from a local nursery and installing it ($4,200).

---

[4] We note, however, that defendant cites no Oregon cases explicitly holding that replacement cost can never be used as a measure of damages in a timber trespass case, and we have not been able to locate any. Instead, defendant relies on cases that hold that the measure of damages in a timber trespass case is either the diminution in value of the real property or the cut trees' stumpage value. Although those cases would seem to imply that replacement cost ordinarily may not be a proper measure of damages in a timber trespass case, that proposition does not necessarily flow from the text of the timber trespass statute, which does not specify a particular measure of damages, and we have suggested that, depending on the circumstances, different measures of damages may be appropriate. *See Sinsel v. Henderson*, 62 Or App 150, 154, 154 n 2, 660 P2d 1072 (1983) (noting that timber trespass statutes provide that plaintiff can recover "actual damages," and suggesting that stumpage value may not be the only damage that can be recovered "where the loss of timber is the only injury").

The HOA's final argument is that the removed trees were hazardous and, therefore, Smith's testimony that hazardous trees have no monetary value required the trial court to direct a verdict in its favor. That argument assumes that the jury was required to find that the trees were hazardous, but the evidence did not compel that finding. Instead, the jury permissibly could have found—and apparently did find—that defendants cut down the healthy trees and not the hazardous ones.

For the foregoing reasons, we conclude that the trial court did not err in denying defendant's motion for a directed verdict. We therefore affirm the judgments on appeal.

Affirmed.